FILED

November 18, 2015

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time: 9:18 AM



# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT CHATTANOOGA

| | |
|---|---|
| Andra Upshaw | ) Docket No.: 2015-01-0191 |
|     Employee, | ) |
| v. | ) State File Number: 44244-2015 |
| Joerns Healthcare, Inc. | ) |
|     Employer, | ) Judge Audrey A. Headrick |
| And | ) |
| Liberty Mutual | ) |
|     Insurance Carrier. | ) |
| | ) |

---

## EXPEDITED HEARING ORDER GRANTING TEMPORARY PARTIAL DISABIILTY BENEFITS

---

This matter came before the undersigned Workers' Compensation Judge on the Request for Expedited Hearing filed by the Employee, Andra Upshaw, on October 16, 2015. The central legal issue is whether Mr. Upshaw is entitled to temporary partial disability benefits from June 2, 2015, forward. The employer, Joerns Healthcare, Inc., disputes Mr. Upshaw is entitled to temporary partial disability benefits due to his termination on June 1, 2015. For the reasons set forth below, the Court finds Mr. Upshaw is entitled, in part, to the requested benefits.[1]

### History of Claim

Mr. Upshaw is a fifty-seven-year-old resident of Hamilton County, Tennessee. (T.R. 1.) Mr. Upshaw worked at Joerns as a field service technician. (Ex. 1.) He sustained a compensable back injury on June 1, 2015, while lifting and moving a large bariatric bed at Kindred Healthcare (Kindred), a client of Joerns, in Knoxville, Tennessee. *Id.* Later that day, Joerns terminated Mr. Upshaw. *Id.*

Mr. Upshaw testified Trey Butler, senior human resources generalist with Joerns in Charlotte, North Carolina, called him on the evening of June 1, 2015. He stated Mr. Butler told him he received a call from someone at Kindred, who advised him Mr.

---

[1] A complete listing of the technical record and exhibits admitted at the Expedited Hearing is attached to this Order as an appendix.

Upshaw should not be on Kindred's property. Approximately two years ago, Mr. Upshaw worked at Kindred as a medical technician. On cross-examination, Mr. Upshaw testified he believes Kindred, his former employer, terminated him because of a disagreement he had with a co-worker about an air compressor. Mr. Upshaw testified Mr. Butler terminated him from Joerns on June 1, 2015, because Kindred prohibited him from going onto its property.[2] He testified he was unaware of Kindred's prohibition prior to his termination by Joerns. (Ex. 1.) Additionally, Mr. Upshaw testified he previously performed work at Kindred three times prior to June 1, 2015. He also testified he went to Kindred prior to June 1, 2015, because a friend's mother passed away.

Regarding Mr. Upshaw's termination, Joerns filed affidavits in response to the Request for Expedited Hearing. Since Joerns timely filed the affidavits of Trey Butler and Jose M. Cueva Villanueva pursuant to Rule 7.02(A) of the Court of Workers' Compensation Claims Practices and Procedures (2015), the Court admitted the affidavits into evidence.[3] (Ex. 5 and Ex. 6.) However, neither Mr. Butler nor Mr. Villanueva testified in person or by telephone. Instead, Joerns' counsel read both affidavits into evidence.

In the Affidavit of Trey Butler, senior human resources generalist for Joerns, Mr. Butler stated a different basis for Mr. Upshaw's termination. In his affidavit, Mr. Butler stated, "on or about May 19, 2015, Mr. Upshaw threatened a co-worker with grave bodily harm." (Ex. 5.) He also stated a co-worker allegedly witnessed and reported this verbal altercation. *Id.* Mr. Butler stated Mr. Upshaw's behavior violated company policy, which resulted in Mr. Upshaw's termination for cause. *Id.* He stated Joerns maintains a "Stay at Work Program," which is a light-duty program for injured workers. *Id.* Mr. Butler asserted Mr. Upshaw's restrictions assigned to him on June 29, 2015, would have been accommodated "but for his termination for cause."

In the Affidavit of co-worker, Jose M. Cueva Villanueva, he described a verbal altercation he allegedly witnessed on May 19, 2015, between Mr. Upshaw and another co-worker, John Cooper, regarding seating in a truck. (Ex. 6.) Mr. Villanueva testified he observed an argument between Mr. Upshaw and Mr. Cooper. *Id.* He stated Mr. Upshaw used profanity and made racial remarks to Mr. Cooper. *Id.* Specifically, Mr.

---

[2] At the Expedited Hearing, Joerns objected to additional testimony by Mr. Upshaw on re-direct regarding the other alleged basis for his termination at Joerns because it was beyond the scope of cross-examination. The record reflects cross-examination did not address that issue, and this Court sustains the objection and excludes any testimony on that issue by Mr. Upshaw subsequent to Joerns' objection.

[3] The Court did not consider attachments to the affidavits unless it admitted the attachments into evidence during the Expedited Hearing. Additionally, defense counsel objected to an "offer of proof" made by counsel for Mr. Upshaw. Although the Court overruled defense counsel's objection during the Expedited Hearing, the Court finds that the statements made by Mr. Upshaw's counsel did not comply with Rule 103 of the Tennessee Rules of Evidence and, as such, will construe the statements as argument rather than proof.

Villanueva testified, "Mr. Upshaw indicated that he would use a pistol on Mr. Cooper and indicated that he wanted to stab Mr. Cooper." *Id.* Further, Mr. Villanueva specified he "reported this information to [his] superiors at Joerns on May 20, 2015." *Id.*

After Joerns read the affidavits of Mr. Butler and Mr. Villanueva into evidence, Mr. Upshaw testified without objection as a rebuttal witness.[4] He stated he is not familiar with the names Jose M. Cueva Villanueva or John Cooper. Mr. Upshaw testified he never had an altercation with a co-worker at Joerns on May 19, 2015, or at any time. He reiterated that Mr. Butler told him the reason for his termination was that he could no longer deliver to Kindred, which is Joerns' biggest client.

On June 15, 2015, Mr. Upshaw selected Physicians Care from a panel. (Ex. 2.) On June 18, 2015, a medical provider at Physicians Care diagnosed Mr. Upshaw with lumbago, prescribed medication, and placed significant restrictions on him through July 2, 2015. *Id.* The medical provider assigned the following restrictions: no kneeling; no squatting; no bending; no twisting; no climbing ladders; no above-shoulder lifting over five pounds; no lifting over five pounds from waist to shoulder; no lifting over five pounds below the waist; and, no pulling or pushing over five pounds. *Id.*

On June 29, 2015, Mr. Upshaw reported no improvement to the medical provider at Physicians. *Id.* His diagnosis of lumbago remained the same. The medical provider also diagnosed Mr. Upshaw with a lumbosacral joint/ligament sprain and referred him to physical therapy. *Id.* The medical provider changed Mr. Upshaw's restriction to: no above-shoulder lifting over twenty pounds; no lifting over twenty pounds from waist to shoulder; no lifting over twenty pounds below the waist; and, no pulling or pushing over forty pounds. *Id.* The record reflects Mr. Upshaw's restrictions remained in effect through July 6, 2015. *Id.* The medical records entered into evidence do not contain an office note for July 6, 2015.

On August 12, 2015, Mr. Upshaw returned to Physicians Care.[5] (Ex. 9.) Dr. Bruce Thompson diagnosed him with a lumbar sprain. He assigned Mr. Upshaw with the following restrictions: no climbing ladders; no prolonged sitting, standing, bending, or twisting; no above-shoulder lifting over twenty pounds; no waist to shoulder lifting above twenty pounds; no lifting over twenty pounds below the waist; and, no pulling or pushing

---

[4] Joerns made no objection to Mr. Upshaw testifying as a rebuttal witness. However, it made an "asked and answered" objection when Mr. Upshaw was asked about the alleged May 19, 2015 altercation, which was overruled.

[5] At the Expedited Hearing, Joerns objected to the admission of Page 3 of the Physicians Care medical note from August 12, 2015, because it was not timely filed with the Court ten business days prior to the Expedited Hearing pursuant to Rule 7.01 of the Court of Workers' Compensation Claims Practices and Procedures (2015). However, it was undisputed that Mr. Upshaw obtained the August 12, 2015, Physicians Care record directly from Joerns after he filed the Request for Expedited Hearing. Additionally, Rule 0800-02-21-.16(6)(a) (2015) of the Tennessee Compilation Rules and Regulations permits the Court to admit late-filed medical records for good cause shown. Under these circumstances, Joerns experienced no prejudiced by the late filing. This Court overrules the objection and admits Page 3 of the August 12, 2015, Physicians Care record as Exhibit 9.

over twenty pounds. *Id.* Dr. Thompson continued Mr. Upshaw's restrictions "until seen by back specialist." *Id.*

Mr. Upshaw testified he obtained employment with Barton Security on September 14, 2015, as "walking security." Although he applied for a security shuttle driver position, Barton Security hired him as walking security. Mr. Upshaw testified he worked fifty-two hours over two weeks training on a computer. He made $7.50 per hour. After getting his certification, Mr. Upshaw stated during the third week, he worked four days performing the walking security position. He stated he worked twelve hours on Monday and Wednesday and eight hours on Tuesday and Thursday and made $9.50 per hour. Mr. Upshaw testified the walking security position was not within his restrictions and required him to walk the entire time he worked, which bothered his back and led to quitting his job on Friday, October 9, 2015. On cross-examination, Mr. Upshaw testified he has applied at various medical facilities, but has not received an offer in response to his applications.

Mr. Upshaw asked the Court to order temporary partial disability benefits from the date Joerns terminated him on June 1, 2015, forward.[6] Joerns asked the Court to deny Mr. Upshaw's request for temporary partial disability benefits due to his alleged termination for cause. Mr. Upshaw's agreed upon average weekly wage was $854.24, which equates to a weekly compensation rate of $569.52.

Mr. Upshaw filed a Petition for Benefit Determination seeking temporary disability benefits. (T.R. 1.) The parties did not resolve the disputed issues through mediation, and the Mediating Specialist filed a Dispute Certification Notice on August 31, 2015. (T.R. 2.) Mr. Upshaw filed a Request for Expedited Hearing on September 28, 2015. (T.R. 3.) This Court heard the matter on October 16, 2016.

**Findings of Fact and Conclusions of Law**

The Workers' Compensation Law shall not be remedially or liberally construed in favor of either party but shall be construed fairly, impartially and in accordance with basic principles of statutory construction favoring neither the employee nor employer. Tenn. Code Ann. § 50-6-116 (2014). The employee in a workers' compensation claim has the burden of proof on all essential elements of a claim. *Tindall v. Waring Park Ass'n*, 725 S.W.2d 935, 937 (Tenn. 1987);[7] *Scott v. Integrity Staffing*

---

[6] Counsel for Mr. Upshaw also moved for an award of attorney fees. However, the Court advised counsel it would not entertain a verbal motion for attorney fees.

[7] The Tennessee Workers' Compensation Appeals Board allows reliance on precedent from the Tennessee Supreme Court "unless it is evident that the Supreme Court's decision or rationale relied on a remedial interpretation of pre-July 1, 2014 statutes, that it relied on specific statutory language no longer contained in the Workers' Compensation Law, and/or that it relied on an analysis that has since been addressed by the general assembly through statutory amendments." *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *13 n.4 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015).

*Solutions,* No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015). An employee need not prove every element of his or her claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing,* No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). At an expedited hearing, an employee has the burden to come forward with sufficient evidence from which the trial court can determine that the employee is likely to prevail at a hearing on the merits. *Id.*

An injured employee may not be entitled to temporary partial disability benefits if he or she is terminated from employment for cause and the employer reasonably would have been able to provide modified duty within the restrictions assigned. To be excused from this obligation, the employer is required to demonstrate that the termination of the injured employee's employment involved a breach of the reasonable expectations of an employer and appears reasonably appropriate. In such cases, the employer is deemed to have made reasonable efforts to accommodate the employee's work restrictions and the Employee's work injury is not the reason why he is not returned to his former job. *See generally Carter v. First Source Furniture Group,* 92 S.W.3d 367, 371-372 (Tenn. 2002) (holding that, "an employer should be permitted to enforce workplace rules without being penalized in a workers' compensation case." *Id.* at 368.)

In order to decide the issue, the Court must determine: "(1) that the actions allegedly precipitating the employee's dismissal qualified as misconduct under established or ordinary workplace rules and/or expectations; and (2) that those actions were, as a factual matter, the true motivation for the dismissal." *Ingram v. Heads Up Cutting Ctr.,* No. M2012-00464-WC-R3-WC, 2013 Tenn. LEXIS 338, at *20 (Tenn. Workers' Comp. Panel Apr. 10, 2013); *see also Durham v. Cracker Barrel Old Country Store, Inc.,* No. E2008-00708-WC-R3-WC, 2009 LEXIS 3, at *9 (Tenn. Workers' Comp. Panel Jan. 5, 2009).

The Court in the present case finds that Mr. Upshaw's termination on June 1, 2015, does not fall under the umbrella of "misconduct under established or ordinary workplace rules and/or expectations." *Ingram, supra,* at *20. The Court carefully considered Joerns' position that Mr. Upshaw's termination precludes him from receiving temporary partial disability benefits. However, the Court finds unpersuasive Joerns' argument that it terminated Mr. Upshaw on June 1, 2015, due to an alleged verbal altercation occurring on May 19, 2015, and reported by a co-worker the next day. The Court heard live testimony from Mr. Upshaw, who appeared calm, confident, and self-assured. However, the affidavits of Mr. Butler and Mr. Villanueva were not subject to cross-examination because they did not provide in-person testimony.

5

It is implausible to the Court that an employer would delay terminating an employee if he purportedly used profanity, made racial remarks, and threatened physical bodily harm against a co-worker. Likewise, it is also implausible to the Court that Joerns' true motivation for terminating Mr. Upshaw on the very day he sustained a work-related injury was due to an alleged verbal altercation that happened a week and a half prior. Mr. Upshaw's credible testimony is that he never had an altercation with anyone while employed at Joerns. Therefore, the Court finds that Joerns' true motivation for terminating Mr. Upshaw was not due to misconduct regarding an alleged verbal altercation.

The Court next turns to Mr. Upshaw's testimony regarding the reason given to him by Joerns regarding his termination on June 1, 2015. Mr. Butler allegedly received a phone call from someone advising him of a prohibition against Mr. Upshaw being on Kindred's property. Mr. Upshaw also testified he did not know of any prohibition against him being on Kindred's property. The Court accepts Mr. Upshaw's testimony that the reason given to him by Joerns regarding his termination related to an alleged prohibition of him being on Kindred's property. However, this unsubstantiated basis for termination is not "misconduct under established or ordinary workplace rules and/or expectations." *Id.* Mr. Upshaw's unrefuted testimony is that he had been on the premises of Kindred's property a total of four times prior to June 1, 2015, and he was unaware of any such prohibition. Therefore, the Court again finds that Joerns' true motivation for terminating Mr. Upshaw was not due to misconduct regarding an unsubstantiated claim that he could not be on Kindred's premises.

Although Joerns terminated Mr. Upshaw on June 1, 2015, his work restrictions did not begin until June 18, 2015. He is not entitled to temporary partial disability during the time he had no restrictions from June 2, 2015, through June 17, 2015. However, Mr. Upshaw is entitled to a total of $7,159.68 in temporary partial disability benefits from June 18, 2015, through September 13, 2015. Mr. Upshaw testified he worked for Barton Security on September 14, 2015, as "walking security" until he quit on October 9, 2015. For the first two weeks working at Barton Security, Mr. Upshaw testified he worked a total of fifty-two hours making $7.50 per hour. For the third week, Mr. Upshaw testified he worked twelve hours for two days and eight hours for two days (a total of forty hours) making $9.50 per hour. Based upon Mr. Upshaw's average weekly wage of $854.24, he is entitled to a total of $625.68 in temporary partial disability benefits for the period of September 14, 2015, through October 9, 2015.[8]

---

[8] Mr. Upshaw did not work while on restricted duty from June 18, 2015, through September 13, 2015, which is twelve weeks and four days. When multiplying his weekly compensation rate of $569.52 by twelve weeks and four days, it equates to $7,159.68 in temporary partial disability benefits. From September 14, 2015, through October 2, 2015, Mr. Upshaw's gross pay for working fifty-two hours at $7.50 per hour was $390.00. When deducting $390.00 from his average weekly wage of $854.24, the total is $464.24. Sixty-six and two-thirds of $464.24 equates to $309.50 in temporary partial disability benefits. From October 3, 2015, through October 9, 2015, Mr. Upshaw's gross pay was $380.00 for working forty hours at $9.50 per hour. When deducting $380.00 from his average weekly

6

Mr. Upshaw also testified he quit working for Barton Security because the job was outside of his restrictions and bothered his back. Dr. Bruce Thompson at Physicians Care placed numerous restrictions on Mr. Upshaw. However, none of the restrictions specifically prohibited prolonged walking. Although he assigned the restriction of "no prolonged . . . standing" to Mr. Upshaw, there is no indication Dr. Thompson intended to include a limitation on walking within that restriction. Since Mr. Upshaw voluntarily quit his job at Barton Security that fell within the restrictions placed upon him, he is not presently entitled to temporary partial disability benefits from October 10, 2015, forward. Therefore, the Court finds that Mr. Upshaw is presently only entitled to temporary partial disability benefits from June 18, 2015, through October 9, 2015, in the total amount of $7,785.36.

**IT IS, THEREFORE, ORDERED** as follows:

1. The amount of temporary disability benefit is $569.52 per week based on Employee's average weekly wage of $854.24.

2. Payment of past due benefits in the amount of $7,785.36 shall be made for the period from June 18, 2015, to October 9, 2015.

3. This matter is set for a Scheduling Hearing on December 15, 2015, at 10:30 a.m., EDT.

4. **Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2014). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.**

5. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471 or (615) 532-1309.

---

wage of $854.24, the total is $474.24. Sixty-six and two-thirds of $474.24 equates to $316.18 in temporary partial disability benefits.

**ENTERED** this the 18th day of November, 2015.

_(signature)_

Judge Audrey A. Headrick
Court of Workers' Compensation Claims

Initial (Scheduling) Hearing:

A Scheduling Hearing has been set with **Judge Audrey A. Headrick, Court of Workers' Compensation Claims. You must call 423-634-0164 or toll free at 855-383-0001 to participate in the Initial Hearing.**

**Please Note: You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation. All conferences are set using Eastern Time (ET).**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk _within seven business days_ of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of**

8

**Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within three business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within three business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

## APPENDIX

Exhibits:
1. Affidavit of Mr. Upshaw
2. Medical Records of Physicians Care
3. Wage Statement
4. Panel of Physicians
5. Affidavit of Trey Butler
6. Affidavit of Jose M. Cueva Villanueva
7. Page 3 of Physicians Care medical note dated June 18, 2015

Marked for Identification Purposes Only:
1. Alliance Physical Therapy records
2. Joerns' Recover Care Job Description
3. Page 3 of Physicians Care medical note dated August 12, 2015

Technical record:[9]
1. Petition for Benefit Determination, July 17, 2015
2. Dispute Certification Notice, August 31, 2015
3. Request for Expedited Hearing, September 28, 2015
4. Notice of Scheduled Hearing, October 5, 2015

---

[9] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order Granting Temporary Partial Disability Benefits was sent to the following recipients by the following methods of service on this the 18th day of November, 2015.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Email/Mail Address |
|------|---------------|------------------|---------|------------|-----------|--------------------|
| Carmen Ware, Esq. | | | | | X | cyware@thewarelawfirm.com |
| Owen Lipscomb, Esq. Robyn Owens, Esq. | | | | | X X | owen.lipscomb@libertymutual.com robyn.owens@libertymutual.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov