FILED

December 10, 2015

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time: 2:30 PM



# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT COOKEVILLE BY INTERCHANGE

| | |
|---|---|
| Justin Kennedy, | ) Docket No.: 2015-01-0296 |
| Employee, | ) |
| v. | ) State File No.: 52742-2015 |
| | ) |
| Paladin Attachments, | ) |
| Employer, | ) |
| And | ) Judge Robert Durham |
| | ) |
| Sentry Insurance Co., | ) |
| Insurance Carrier/TPA. | ) |
| | ) |

## EXPEDITED HEARING ORDER DENYING BENEFITS
## (RECORD REVIEW ONLY)

THIS CAUSE came before the undersigned Workers' Compensation Judge upon the Request for Expedited Hearing filed by Justin Kennedy, the Employee, on November 4, 2015, pursuant to Tennessee Code Annotated section 50-6-239 (2014) to determine if Paladin Attachments (Paladin), the Employer, is obligated to provide temporary partial disability benefits. Pursuant to Rule 0800-02-21-.02(13) (2015) of the Tennessee Compilation Rules and Regulations, Mr. Kennedy requested the Court issue a ruling based on a review of the file without an evidentiary hearing. Paladin voiced no objection. Considering the positions of the parties, the applicable law, and all of the evidence submitted, the Court concludes it needs no further information to render judgment.

The dispositive issue is whether Mr. Kennedy is entitled to temporary partial disability benefits for his compensable injury following his termination by Paladin. The Court finds the evidence submitted by Mr. Kennedy is insufficient to establish that Paladin did not terminate him for cause. Therefore, he is not entitled to temporary partial disability benefits.[1]

---

[1] Additional information regarding the technical record and exhibits is attached to this Order as an Appendix.

1

## History of Claim

Mr. Kennedy is a thirty-six-year-old resident of Bradley County, Tennessee, who worked as a welder and robot operator for Paladin since December 18, 2014. (T.R. 1.) On his hire date, Mr. Kennedy acknowledged that he received and read Paladin's leave and attendance policies. (Ex. 3 at 9.) In order to take advantage of vacation and "personal time" leave, the policy required employees to provide advance notice and receive approval by a supervisor. (Ex. 3 at 7.) If the employee did not provide notice, the absence or tardiness resulted in the accumulation of "points" tallied on a rolling, twelve-month basis. *Id.* The policy provided a schedule of disciplinary steps, up to and including termination, Paladin may take depending on the number of accrued points; however, it also stated Paladin retained the right to skip one or more steps in its sole discretion. (Ex. 3 at 7, 8.)

On May 13, 2015, Wesley Harden, Mr. Kennedy's supervisor, censured him for excessive absenteeism and tardiness. (Ex. 2 at 2.) According to the "Employee Corrective Action" form, Mr. Kennedy had twenty absences or tardies in the previous twelve months. (Ex. 2 at 3.) The form also noted that it constituted a "Final Warning" with termination being the next step, even though Paladin had taken no previous disciplinary actions. *Id.* Mr. Kennedy acknowledged receipt of the form by his signature. (Ex. 2 at 4.)

On July 6, 2015, Mr. Kennedy sustained an injury to his right wrist while attempting to pick up a sheet of tin. (Ex. 1.) He received treatment that day from Dr. David Darden with Workforce Corporate Health (WCH). (Ex. 6 at 1.) Dr. Darden diagnosed Mr. Kennedy with a right wrist strain and restricted him from pushing, pulling, or lifting over five pounds; repetitive grasping with his right hand; and, using impact or vibrating tools. (Ex. 6 at 2.) On July 20, Dr. McKinley Lundy with WCH took over Mr. Kennedy's treatment. (Ex. 6 at 6.) He continued the restrictions imposed by Dr. Darden until he referred Mr. Kennedy to an orthopedist on August 31, 2015, for possible median nerve compression. (Ex. 6 at 30.)[2]

Paladin accommodated Mr. Kennedy's restrictions by allowing him to train others to use his machine without actually operating it himself. (Ex. 4 at 2.) According to Mr. Kennedy's affidavit, he continued to work on light duty, although his wrist injury significantly hampered his performance, until July 28. (Ex. 1.) On that date, Mr. Kennedy testified that he arrived at work on time but forgot to clock in. *Id.* He stated he told his supervisor, who instructed him to complete a "missed punch card," and the supervisor would "resolve the issue." *Id.* Paladin terminated Mr. Kennedy later that day, which he felt had "more to do with my inability to perform the work as well as I did before I was injured than any confusion about my presence on the 28 of July." *Id.*

---

[2] This is the last medical record provided by the parties.

Paladin filed affidavits from Jason Malone, Doug Hitchcox, and Mr. Harden, which provide a different account of the events leading to Mr. Kennedy's termination. According to Mr. Malone, Human Resource Business Partner for Paladin, Mr. Kennedy was late in mid-June, and he and Mr. Hitchcox, Manufacturing Manager, told him Paladin would terminate him if he had another infraction. (Ex. 3 at 3.) Mr. Malone further testified Paladin had terminated other employees for violating the attendance policy, and had it not been for Mr. Kennedy's misconduct, he could have continued his employment. *Id.*

Mr. Hitchcox testified that on July 28, Mr. Kennedy did not attend a "mandatory team improvement board meeting" scheduled to start at the beginning of his shift. (Ex. 4 at 3.) Mr. Kennedy later completed a "missed punch" form stating he arrived at work at 6:30 a.m., but forgot to clock in. *Id.* Mr. Kennedy's immediate supervisor, Jonathon Mar, advised Mr. Hitchcox that he did not see Mr. Kennedy until 6:40 a.m., and he did not see him at the team meeting either. *Id.* Mr. Hitchcox then spoke with Mr. Kennedy, who told him he had been at the team meeting. *Id.* When Mr. Hitchcox confronted Mr. Kennedy with Mr. Mar's statement, he recanted and said he must have been in the bathroom. *Id.*

According to his affidavit, Mr. Hitchcox then took Mr. Kennedy to meet with a Human Resource Specialist. During the meeting, Mr. Kennedy admitted he arrived late that morning. *Id.* At that point, Mr. Hitchcox and the Human Resource Specialist made the decision to terminate him. *Id.*

### Findings of Fact and Conclusions of Law

The Workers' Compensation Law shall not be remedially or liberally construed in favor of either party but shall be construed fairly, impartially and in accordance with basic principles of statutory construction favoring neither the employee nor employer. Tenn. Code Ann. § 50-6-116 (2014). The employee in a workers' compensation claim has the burden of proof on all essential elements of a claim. *Tindall v. Waring Park Ass'n,* 725 S.W.2d 935, 937 (Tenn. 1987);[3] *Scott v. Integrity Staffing Solutions,* No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015). An employee need not prove every element of his or her claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing,* No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27,

---

[3] The Tennessee Workers' Compensation Appeals Board allows reliance on precedent from the Tennessee Supreme Court "unless it is evident that the Supreme Court's decision or rationale relied on a remedial interpretation of pre-July 1, 2014 statutes, that it relied on specific statutory language no longer contained in the Workers' Compensation Law, and/or that it relied on an analysis that has since been addressed by the general assembly through statutory amendments." *McCord v. Advantage Human Resourcing,* No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *13 n.4 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015).

3

2015). At an expedited hearing, an employee has the burden to come forward with sufficient evidence from which the trial court can determine that the employee is likely to prevail at a hearing on the merits. *Id.*

Tennessee law provides that an employer must pay temporary disability benefits until the employee reaches maximum medical improvement so long as the employee can prove an inability to work due to a compensable injury. *Simpson v. Satterfield,* 564 S.W.2d 953, 955 (Tenn. 1978); *See also Gray v. Cullom Mach., Tool and Die, Inc.,* 152 S.W.3d 439, 443 (Tenn. 2004); *Gluck Brothers, Inc. v. Coffey,* 431 S.W.2d 756, 759 (Tenn. 1968). An employee is entitled to receive temporary partial disability benefits, pursuant to Tennessee Code Annotated section 50-6-207(2) (2014), when "the temporary disability is not total." *Stem v. Thompson Servs.,* No. M2010-01566-WC-R3-WC, 2011 Tenn. LEXIS 742, at *27 (Tenn. Workers' Comp. Panel July 26, 2011). Tennessee Code Annotated section 50-6-207(2)(A) (2014) provides that, "In all cases of temporary partial disability, the compensation shall be sixty-six and two-thirds percent (66 2/3 %) of the difference between the average weekly wage of the worker at the time of the injury and the wage the worker is able to earn in the worker's partially disabled condition."

Mr. Kennedy did not present any evidence that any physician took him completely off work. Thus, the Court finds that he has never been totally disabled and is not entitled to temporary total disability benefits.

The parties agree that while Paladin employed Mr. Kennedy, he continued to work within the restrictions placed on his activities by Dr. Lundy with no reduction in his wage. Thus, the Court finds he is not entitled to any temporary disability benefits prior to his termination on July 28, 2015. The Court further finds that, if not for his termination on July 28, Mr. Kennedy could have continued to work at full wage for Paladin under Dr. Lundy's restrictions. Therefore, the Court must determine whether Mr. Kennedy is entitled to temporary partial disability benefits following his termination.

While the Court finds no authority that addressed the issue on point, it is analogous to those cases where the issue was whether the 1.5 times cap on permanent disability benefits should apply when the employee was terminated prior to reaching maximum medical improvement. *See Carter v. First Source Furniture Group,* 92 S.W.3d 367, 368 (Tenn. 2002) In *Carter,* the Tennessee Supreme Court held an employer should be permitted to enforce workplace rules without being penalized in a workers' compensation case. *Id.* Thus, an employee's termination for cause will preclude the employee from receiving benefits he may have otherwise been due because of his loss of employment.

In order to decide the issue, the Court must determine: "(1) that the actions allegedly precipitating the employee's dismissal qualified as misconduct under established or ordinary workplace rules and/or expectations; and (2) that those actions

4

were, as a factual matter, the true motivation for the dismissal." *Ingram v. Heads Up Cutting Ctr.*, No. M2012-00464-WC-R3-WC, 2013 Tenn. LEXIS 338, at *20 (Tenn. Workers' Comp. Panel Apr. 10, 2013); *see also Durham v. Cracker Barrel Old Country Store, Inc.*, No. E2008-00708-WC-R3-WC, 2009 Tenn. LEXIS 3, at *9 (Tenn. Workers' Comp. Panel Oct. 22, 2008).

In this matter, Mr. Kennedy did not dispute that he had twenty occurrences where he was tardy or absent in the year prior to the "final warning" issued to him on May 23, 2015. (Ex. 2 at 3.) Pursuant to Paladin's attendance policy, which Mr. Kennedy acknowledged receiving, these violations were more than enough to warrant disciplinary action, including termination. (Ex. 3 at 7, 8.) However, Paladin did not terminate Mr. Kennedy at that time, but instead issued a written warning. (Ex. 2 at 3.) While Paladin skipped a number of "steps" in issuing a "final warning" as its initial disciplinary action, its attendance policy allowed the discretion to do so. *Id.* Significantly, Paladin issued this "final warning" prior to Mr. Kennedy's work-related injury on July 6, 2015. *Id.*

The Court finds the evidence establishes Mr. Kennedy was late in arriving at work on July 28, 2015, despite his assertions to the contrary. As a result, the Court finds Mr. Kennedy's actions constituted misconduct under Paladin's "established or ordinary workplace rules and/or expectations." *Ingram, supra,* at *20. Mr. Kennedy offered no substantive evidence to establish that his misconduct was not the "true motivation for his dismissal," and Paladin offered substantial evidence to the contrary. *Id.*

Accordingly, the Court finds Mr. Kennedy has failed to provide sufficient evidence from which the trial court can determine that he is likely to prevail at a hearing on the merits regarding the issue of temporary partial disability. *McCord, supra,* at *7-8, 9. As a result, his request for benefits is denied.

IT IS, THEREFORE, ORDERED that:

1.     Mr. Kennedy's request for temporary partial disability benefits is denied.

2.     This matter is set for Initial Hearing on January 15, 2016, at 10:00 a.m.

**ENTERED THIS THE 10th DAY OF DECEMBER, 2015.**

**Robert V. Durham, Judge**
**Court of Workers' Compensation Claims**

**Initial Hearing:**

An Initial Hearing has been set with Judge Robert Durham, Court of Workers' Compensation Claims. You must call 615-253-0010 or toll-free at 866-689-9049 to participate in the Initial Hearing.

Please Note: **You must call in on the scheduled date/time to participate.** Failure to call in may result in a determination of the issues without your further participation. All conferences are set using Central Time (CT).

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited

Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

# APPENDIX

Exhibits:

1. Affidavit of Justin Kennedy;
2. Affidavit of Wesley Harden with attachments;
3. Affidavit of Jason Malone with attachments;
4. Affidavit of Doug Hitchcox with attachments;
5. Medical records of Workforce Corporate Health


Technical Record:

1. Petition for Benefit Determination;
2. Dispute Certification Notice;
3. Request for Expedited Hearing;
4. Transfer Order;
5. Docketing Notice;
6. Mr. Kennedy's position statement; and,
7. Paladin's position statement

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order Denying Benefits was sent to the following recipients by the following methods of service on this the 10th day of December, 2015.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| Matthew G. Coleman | | | X | MColeman@LoganThompsonLaw .com |
| LeeAnn Murray | | | X | leeamurray@feeneymurray.com |

**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**

9