**FILED**

**December 11, 2015**

**TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD**

**Time: 9:55 A.M.**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| Mario Mace | ) | Docket No. 2015-06-0059 |
| | ) | |
| v. | ) | |
| | ) | State File No. 88006-2014 |
| Express Services, Inc. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | |
| Compensation Claims | ) | |
| Kenneth M. Switzer, Chief Judge | ) | |

---

### Affirmed and Remanded – Filed December 11, 2015

---

In this second interlocutory appeal of this case, the employee contends that he is entitled to temporary partial disability benefits notwithstanding his termination for using profane language in the workplace. The employer deemed the employee's actions to be insubordination and unprofessional conduct, which were prohibited by an employee handbook, and terminated his employment. The employee claimed that his misconduct was a pretext for terminating him for his work injury. The trial court determined that the employer provided appropriate light-duty work and that the termination was not pretextual. Accordingly, the trial court denied the employee's request for temporary partial disability benefits. We affirm.

Judge Marshall L. Davidson, III, delivered the opinion of the Appeals Board, in which Judge David F. Hensley and Judge Timothy W. Conner joined.

William B. Hicky, Nashville, Tennessee, for the employee-appellant, Mario Mace

Gregory H. Fuller, Brentwood, Tennessee, for the employer-appellee, Express Services, Inc.

1

## Factual and Procedural Background

Mario Mace ("Employee"), a forty-five-year-old resident of Humphreys County, Tennessee, was employed by Express Services, Inc. ("Employer"), a temporary staffing agency. He was assigned to work at Tennessee Bun Company in its shipping and receiving department when, on November 4, 2014, a mishap with a dolly caused stacks of bread trays to fall on him, injuring his left shoulder.

Employee's authorized physician, Dr. Damon Petty, recommended surgery to repair a torn rotator cuff and a labral tear in Employee's left shoulder. Employer declined to authorize the surgery, and Employee filed a petition seeking to compel Employer to provide medical treatment as recommended by Dr. Petty. Following an evidentiary hearing, the trial court agreed that the requested medical benefits were appropriate and entered an order on April 27, 2015, directing Employer to provide the treatment recommended by Dr. Petty. Employer appealed and, on June 19, 2015, we affirmed the trial court's decision.

Two months later, on August 18, 2015, Employee filed a second petition, this time claiming that Employer was improperly denying temporary disability benefits based on his March 17, 2015 termination after he "stormed out of Employer's office" the previous day. Employee was terminated for using profane language as he walked through Employer's lobby where co-workers and prospective employees were present and heard what he said.

The events leading up to Employee's termination are not seriously in dispute. Because Dr. Petty had assigned work restrictions prohibiting Employee from using his left arm at work, Employer elected to provide light-duty work for him in its office.[1] The work involved clerical duties such as compiling packets of documents, paper clipping documents, and assembling employee handbooks. He was also asked to empty trash cans and clean the parking lot. Employer provided a tool for grabbing the trash and would assist in moving trash receptacles so that Employee would be able to perform this task using only his right arm.

Employee testified that it was difficult to put on shirts with sleeves due to his shoulder injury, so he began wearing sleeveless shirts with a jacket over his shoulder. At one point, Employer's owner saw Employee and inquired about his attire. After Employee explained why he was wearing a shirt with no sleeves, the owner agreed that Employee could continue to wear sleeveless shirts as long as he covered his arms while working in locations visible to the public. Pam Kuhns, Employer's manager, testified

---

[1] Employee was taken completely off work for a period of time after undergoing surgery on his shoulder in July 2015. Temporary total disability benefits were paid for that period, and those benefits are not in dispute.

that Employee was required to cover his arms because he had tattoos the owner considered unprofessional in the workplace.

On March 16, 2015, Employee was asked to clean the parking lot and, because the day was warm, he removed his jacket. After completing his assigned task, he went inside without wearing his jacket and received a written warning from Ms. Kuhns for violating "[d]ress code for office." Ms. Kuhns noted on the warning that the next warning could result in termination. Employee then walked through Employer's reception area and stated "this is unf_cking believable." Employee testified that he did not intend for anyone to hear him and that his comment was not directed at any particular person. Rather, he stated that he was frustrated with having been, in his opinion, unfairly disciplined. Additionally, he testified that he believed Employer had assigned him tasks outside his restrictions in an effort to make him quit.

Employee returned to work the next day and was again asked to clean the parking lot. He complied and, upon completion, entered Employer's building and requested a copy of his write-up, which Ms. Kuhns provided. He also requested a copy of the dress code, which was not provided. Ms. Kuhns then instructed Employee to see her in her office, at which time he was terminated. Ms. Kuhns testified that the termination was due to Employee's unacceptable use of profanity in the workplace the previous day. She also testified that Employer had a "good reputation in the community" and that saying the "f-word" in the workplace was unprofessional. She considered Employee's language to be insubordination and stated that he "was dismissed for his misconduct for what he said in the lobby, with people out in the lobby." For his part, Employee admitted that what he said was unprofessional and "obscene," that people were in the lobby, and that his termination was due to what he said rather than his attire. He also acknowledged having received an employee handbook stating that grounds for dismissal included "insubordination," "unprofessional conduct," and "lewd behavior."

An individual assigned to work the front desk, Denny Molsberry, testified that she was able to hear Employee's comment and that, at the time he made the comment, two prospective employees were in the waiting area. She stated that, based on their reactions when Employee left the building, it was clear that they heard him as well.

Employee asserted that he was entitled to temporary partial disability benefits because his termination was pretextual and that he was justifiably frustrated Employer was not providing work within his restrictions. The trial court was unpersuaded and denied Employee's request for temporary partial disability benefits. Employee appealed, and the record was received by the Appeals Board Clerk on December 2, 2015.

3

## Standard of Review

The standard we apply in reviewing a trial court's decision is statutorily mandated and limited in scope. Specifically, "[t]here shall be a presumption that the findings and conclusions of the workers' compensation judge are correct, unless the preponderance of the evidence is otherwise." Tenn. Code Ann. § 50-6-239(c)(7) (2014). The trial court's decision must be upheld unless the rights of a party "have been prejudiced because findings, inferences, conclusions, or decisions of a workers' compensation judge:

(A)     Violate constitutional or statutory provisions;
(B)     Exceed the statutory authority of the workers' compensation judge;
(C)     Do not comply with lawful procedure;
(D)     Are arbitrary, capricious, characterized by abuse of discretion, or clearly an unwarranted exercise of discretion;
(E)     Are not supported by evidence that is both substantial and material in the light of the entire record."

Tenn. Code Ann. § 50-6-217(a)(3) (2015). Like other courts applying the standards embodied in section 50-6-217(a)(3), we will not disturb the decision of the trial court absent the limited circumstances identified in the statute.

## Analysis

Employee contends that his termination was pretextual and, as such, should be disregarded and temporary disability benefits ordered. Employer responds that Employee was terminated for using profane language in the workplace, which it considered to be insubordination, unprofessional conduct, and lewd behavior, all of which were prohibited by an employee handbook Employee admitted receiving. The trial court ruled that Employer's decision to terminate Employee was reasonable. We agree.

As the name implies, an injured worker is entitled to temporary partial disability benefits, a category of vocational disability distinct from temporary total disability, when the temporary disability is not total. S*ee* Tenn. Code Ann. § 50-6-207(1)-(2) (2014). Specifically, while temporary total disability refers to the employee's condition while completely unable to work because of the injury until the worker recovers as far as the nature of the injury permits, "[t]emporary partial disability refers to the time, if any, during which the injured employee is able to resume some gainful employment but has not reached maximum recovery." *Williams v. Saturn Corp.*, No. M2004-01215-WC-R3-CV, 2005 Tenn. LEXIS 1032, at *6 (Tenn. Workers' Comp. Panel Nov. 15, 2005).

However, even though an employee has a work-related injury for which temporary benefits are payable, an employer may still enforce workplace rules. *Carter v. First Source Furniture Grp.*, 92 S.W.3d 367, 368 (Tenn. 2002). Thus, a termination due to a

violation of workplace rules may relieve an employer of its obligation to provide temporary partial disability benefits, provided the termination was related to the workplace violation. *See Marvin Windows of Tenn., Inc. v. Gardner*, No. W2011-01479-WC-R3-WC, 2012 Tenn. LEXIS 403, at *9 (Tenn. Workers' Comp. Panel June 8, 2012). When confronted with such a case, courts must "consider the employer's need to enforce workplace rules and the reasonableness of the contested rules." *Id.* at 10. An employer will not be penalized for enforcing a policy if the court determines "(1) that the actions allegedly precipitating the employee's dismissal qualified as misconduct under established or ordinary workplace rules and/or expectations; and (2) that those actions were, as a factual matter, the true motivation for the dismissal." *Durham v. Cracker Barrel Old Country Store, Inc.*, No. E2008-00708-WC-R3-WC, 2009 Tenn. LEXIS 3, at *9 (Tenn. Workers' Comp. Panel Jan. 5, 2009).

Applying these principles to this case, it is undisputed that Employer had a policy, reflected in its employee handbook, prohibiting "insubordination," "unprofessional conduct," and "lewd behavior." The handbook made clear that such behavior constituted grounds for dismissal, and it is uncontroverted that Employee had received the handbook. It is also undisputed that Employee used profanity in the lobby of Employer's premises and was overheard by other people. Employee admitted that what he said was unprofessional and "obscene." Employee's supervisor, Ms. Kuhns, testified that Employer had a "good reputation in the community" and that she considered Employee's language to be unprofessional, disrespectful, and insubordinate. She also testified that Employee's language was a violation of Employer's rules. None of this evidence was contradicted. Thus, we have no difficulty concluding "that the actions allegedly precipitating the employee's dismissal qualified as misconduct under established or ordinary workplace rules and/or expectations." *Id.*

Employee makes much of the fact that he was not given a copy of the dress code and argues that, in any event, the dress code did not apply to him. However, the record is clear that Employee was terminated for his actions in the lobby, not for what he was wearing or not wearing. Ms. Kuhns testified that Employee "was dismissed for his misconduct for what he said in the lobby, with people out in the lobby." Employee himself admitted that his termination was due to his profane language rather than his attire. We also note that, although Employee testified he did not direct his language at any particular person and did not intend to be overheard, the area where he chose to make his comment contained other people who did hear what he said. Given these circumstances, we likewise have no difficulty concluding that "those actions were, as a factual matter, the true motivation for the dismissal." *Id.*

Finally, Employee argues that his termination should be disregarded because Employer failed to accommodate his restrictions. The trial court correctly found that, while it may have been difficult to complete some of the tasks assigned to Employee without using his left arm, it was not impossible to do so. The trial court also correctly

noted that Employee had performed these tasks for several months without requesting any change in his assignments or asking Dr. Petty to change his restrictions. Employee never complained about being unable to perform the tasks given to him and, according to Ms. Kuhns, she would have given him different responsibilities had he done so. Ms. Kuhns also testified that she instructed Employee to work within his restrictions and to notify her if he needed help. This evidence was uncontradicted as well. Accordingly, the trial court's decision is affirmed.

## Conclusion

For the foregoing reasons, we conclude that the evidence does not preponderate against the trial court's decision or violate any of the standards identified in Tennessee Code Annotated section 50-6-217(a)(3). Accordingly, we affirm the trial court's decision and remand the case for any further proceedings that may be necessary.


_____
Marshall L. Davidson, III
Presiding Judge
Workers' Compensation Appeals Board

6

**FILED**

**December 11, 2015**

**TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD**

**Time: 9:55 A.M.**



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| Mario Mace | ) | Docket No. 2015-06-0059 |
| | ) | |
| v. | ) | |
| | ) | State File No. 88006-2014 |
| Express Services, Inc. | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 11th day of December, 2015.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Email Address |
|---|---|---|---|---|---|---|
| William Hicky | | | | | X | will@hickylaw.com |
| Gregory Fuller | | | | | X | ghfuller@mijs.com |
| Kenneth M. Switzer, Chief Judge | | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | | X | Penny.Patterson-Shrum@tn.gov |

Matthew Salyer
Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-1606
Electronic Mail: Matthew.Salyer@tn.gov