**FILED**
**Apr 23, 2019**
**10:02 AM(ET)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



# TENNESSE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT CHATTANOOGA

| | |
|---|---|
| **Anthony Montgomery,**<br>**Employee,** ) | **Docket No.: 2017-01-0884** |
| **v.** ) | |
| **Mitchell Industrial Tire Co., Inc.,**<br>**Employer,** ) | **State File No.: 13027-2017** |
| **and** ) | |
| **Great American Alliance Ins. Co.,**<br>**Carrier,** ) | **Judge Thomas Wyatt** |
| **and** ) | |
| **Abigail Hudgens, Administrator of the** )<br>**Bureau of Workers' Compensation** )<br>**Subsequent Injury and Vocational** )<br>**Recovery Fund.** ) | |

---

## EXPEDITED HEARING ORDER FOR MEDICAL BENEFITS

---

This matter came before the Court on April 17, 2019, for an Expedited Hearing requested by Anthony Montgomery. The central issue was whether Mr. Montgomery proved his entitlement to specific medical treatment and temporary disability benefits. For the reasons set forth below, the Court grants Mr. Montgomery's request for psychological treatment and a diagnostic stellate ganglion block but denies his request for cervical care and temporary disability benefits.

### History of Claim

On February 15, 2017, Mr. Montgomery injured his left shoulder when a large, heavy airplane tire rolled off a cart toward him and he attempted to push it away. The impact caused his shoulder to pop and become immediately painful. Mitchell accepted Mr. Montgomery's left-shoulder injury as compensable and provided a panel from which he selected orthopedist Dr. Benjamin Miller. Dr. Miller diagnosed a full-thickness tear of the left rotator cuff, assigned restrictions, and recommended surgery.

1

Mitchell accommodated Mr. Montgomery's restriction against any use of his left arm while he waited for surgery to be scheduled. However, Mitchell terminated him on April 10 for allegedly falling asleep on the job and for dishonesty because he denied the incident occurred. Mr. Montgomery testified that he closed his eyes while on break because the medication Dr. Miller prescribed made him chronically drowsy.

Phil Meadows, Mitchell's vice-president for human resources, testified that Mitchell has company rules prohibiting sleeping on the job and dishonesty that result in immediate termination if violated. He stated Mitchell properly fired Mr. Montgomery because its security video showed that Mr. Montgomery remained in the breakroom with his eyes closed for forty-eight minutes on a ten-minute break. He further stated Mitchell had additional good cause to fire Mr. Montgomery because he lied about sleeping on the job when Mr. Meadows confronted him about the incident. Mr. Meadows testified Mitchell would have accommodated Mr. Montgomery's restrictions to allow him to work full-time at his regular wage had it not terminated him for cause.

Mr. Montgomery underwent surgery on April 19. Two months later, Dr. Miller noted that he still had "a lot of pain" in his left shoulder despite taking pain medication. Dr. Miller limited his work activities to "sedentary duty only, no use of left arm."[1] A month later, Dr. Miller noted Mr. Montgomery's continuing complaints of pain. He discussed the concern that Mr. Montgomery's continuing pain meant he had developed chronic regional pain syndrome (CRPS).

Dr. Miller ordered an MRI to investigate the causes of Mr. Montgomery's ongoing pain. The MRI revealed a slight tear in the rotator cuff, inflammation around one of the anchors surgically placed in the left shoulder, and marrow inflammation in the shoulder joint. However, Dr. Miller did not think that a re-tear had developed and did not ascribe Mr. Montgomery's severe ongoing pain to the conditions shown on the MRI. Mr. Montgomery reported continuing pain on July 20, at which time Dr. Miller wrote, "I feel like he has complex regional pain syndrome of his left shoulder."

The last note from Dr. Miller introduced into evidence does not identify the date of the visit; however, the electronic signature affixed to the note indicates that Dr. Miller reviewed the note on September 2. Mr. Montgomery contends the note documents that Dr. Miller ordered a cervical MRI and referred him for neck treatment. On this issue, the note states:

> We will see if we can get him into Pain Management.[2] We talked about
> getting a second opinion and they wanted to see if Dr. Smalley would

---

[1] Dr. Miller kept Mr. Montgomery on the same restrictions throughout his treatment. The note documenting his last visit with Mr. Montgomery did not alter or lift the restrictions.

[2] Dr. Miller prescribed opioid pain medication throughout his treatment of Mr. Montgomery.

see him. So, we will refer him to Dr. Smalley for a second opinion. I will see him back to follow up with a nerve conduction study.

Dr. Miller discussed two diagnoses in this note: a full-thickness left rotator-cuff tear and neck pain. Under the rotator-cuff diagnosis, Dr. Miller wrote: "ORTHOPEDIC REFERRAL-Schedule within: provider's discretion. Reason for Referral: 2nd opinion." Dr. Miller wrote under the cervical diagnosis that he ordered an EMG. The Court found no documentation in Dr. Miller's records that he ordered a cervical MRI. Also, the records revealed no evidence that Mr. Montgomery saw Dr. Smalley for the second opinion. Mitchell authorized Dr. John Blake to provide the pain management recommended by Dr. Miller.

Dr. Blake first saw Mr. Montgomery on September 18, 2017. He noted that Mr. Montgomery underwent left rotator-cuff surgery but developed chronic post-surgical pain requiring long-term treatment by opioid pain medication. Dr. Blake diagnosed chronic post-traumatic pain following left rotator-cuff surgery and noted long-term opioid use. He also reviewed an EMG that showed left carpal-tunnel syndrome and left-sided cervical radiculopathy. Finally, during the initial visit, Dr. Blake assessed that Mr. Montgomery was depressed and made a referral to a psychologist that Mitchell did not honor.

Dr. Blake started Mr. Montgomery on a non-opioid pain medication, a muscle relaxer, and a sleep aid. When that regimen proved ineffective to manage Mr. Montgomery's pain, Dr. Blake began prescribing hydrocodone, an opioid, in November 2017. Mr. Montgomery has remained on hydrocodone since. Dr. Blake ordered a stellate ganglion block in August 2018 because Mr. Montgomery exhibited some of the symptoms of CRPS. However, it was not performed because Mitchell denied the procedure following Utilization Review. Dr. Blake testified by deposition that he recommended the block to determine if Mr. Montgomery had actually developed CRPS because non-opioid treatment options are available to treat CRPS. He stated he had sufficient clinical indication that Mr. Montgomery had developed CRPS to justify the reasonableness and necessity of the diagnostic block.[3]

Orthopedist Dr. James Cain performed the Utilization Review of the stellate ganglion block, considering it under the ODG treatment guidelines. He did not see Mr. Montgomery personally and twice on the same day attempted unsuccessfully to speak to Dr. Blake for a peer-to-peer review.

---

[3] At one point, Dr. Blake wrote that Mr. Montgomery had decided he did not want to undergo the recommended block. However, Mr. Montgomery testified during the hearing that he did want to undergo the procedure.

Dr. Cain concluded that stellate ganglion blocks did not qualify as reasonable and necessary treatment under the ODG guidelines. Specifically, he stated that the blocks were inappropriate because Dr. Blake (1) had not ruled out all other diagnoses but CRPS and (2) had not evaluated Mr. Montgomery for CRPS under a protocol specified in the ODG. Neither Mr. Montgomery nor Dr. Blake appealed Dr. Cain's denial.

Dr. Blake testified as follows on Mr. Montgomery's need for psychiatric care:

Q. Doctor, did Mr. Montgomery report to you that he was experiencing symptoms of depression?

A. Yes[.] So in the first visit . . . we do a depression screen[.] His score was elevated[.] He stated that his depression was related to his loss of function and inability to work. And I referred him to a psychologist for further evaluation and treatment.

Q. [] So, in your opinion, he needs treatment for the depression, you said, with a psychologist; is that right?

A. Yes, sir.

During the doctor's deposition, Mr. Montgomery asked Dr. Blake to address the sedative effect of the prescribed opioid Mr. Montgomery was taking at the time Mitchell terminated him. Dr. Blake testified that the medication may or may not cause drowsiness depending on the person taking it.

Mr. Montgomery filed a Petition for Benefit Determination seeking authorization for the cervical MRI allegedly ordered by Dr. Miller; referrals for cervical and psychiatric care; authorization for the stellate ganglion block ordered by Dr. Miller; and temporary disability benefits beginning the date Mitchell terminated him. Mitchell countered that Mr. Montgomery did not prove that his alleged depression and neck pain arose primarily out of and in the course and scope of employment. Further, it urged the Court to uphold the Utilization Review denial of the stellate ganglion block. Finally, Mitchell argued that Mr. Montgomery is not entitled to temporary disability benefits because it had good cause to terminate him for sleeping on the job and lying about it. It added that had Mr. Montgomery not been fired for cause, he would have earned his full weekly wages at Mitchell, which would have accommodated his restrictions as it did before he was terminated.

**Findings of Fact and Conclusions of Law**

At an expedited hearing, Mr. Montgomery must provide sufficient evidence from which the Court can determine he is likely to prevail at a hearing on the merits. *McCord*

4

*v. Advantage Human Resourcing,* 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015). Specifically, resolution of the present issues turns on whether Mr. Montgomery proved entitlement to specific treatment plus temporary disability benefits after Mitchell terminated him.

## Medical Benefits

### Cervical Care

The Court first considers whether Mr. Montgomery established that he would likely prevail at trial in proving entitlement to a cervical MRI and/or a referral to a physician for cervical care. Upon a thorough review of Dr. Miller's records, the Court finds no referral for a cervical MRI. He ordered an EMG, which Dr. Blake indicated Mr. Montgomery received. Likewise, the Court does not find that Dr. Miller made a referral for cervical care. The evidence indicates Dr. Miller discussed a referral for a second opinion to Dr. Smalley on the left-shoulder injury but not a referral for cervical treatment. On the basis of the above, the Court holds that Mr. Montgomery did not meet his burden of proving entitlement to cervical care and denies the treatment at this time.

### Psychological Care

The Court next addresses Mr. Montgomery's request for a referral for psychological care. Dr. Blake, whom Mitchell authorized to provide pain management, testified that he referred Mr. Montgomery to a psychologist during the initial visit. Mitchell did not explain why it failed to honor the referral other than to argue that Mr. Montgomery did not prove by medical testimony that his depression is work-related.

Mitchell is correct that Mr. Montgomery has the burden to establish that he will likely prevail at trial that his need for psychological care arises primarily out of and in the course and scope of employment. *See* Tenn. Code Ann. § 50-6-102(14)(C) (2018), which provides "[a]n injury causes . . . the need for medical treatment only if it has been shown to a reasonable degree of medical certainty that [the work injury] contributed more than fifty percent (50%) in causing the . . . medical treatment, considering all causes." The Court holds that Mr. Montgomery met his burden of proof with Dr. Blake's testimony. Dr. Blake testified that he diagnosed Mr. Montgomery with depression and made a referral under workers' compensation because Mr. Montgomery related his depression to the loss of function and inability to work brought on by his work injury.

Tennessee Code Annotated section 50-6-204(h) addresses an injured employee's entitlement to psychological care. It states that "[a]ll psychological or psychiatric services available [to an employee] shall be rendered only by psychologists or psychiatrists and shall be limited to those ordered upon the referral of physicians authorized under subdivision (a)(3)." Since Mitchell authorized Dr. Blake to provide

5

treatment following the authorized treating physician's referral, Dr. Blake qualifies as a physician authorized under subsection 204(h) to make a referral to a psychologist. For these reasons, the Court holds that Mitchell shall promptly provide Mr. Montgomery a panel of psychologists and/or psychiatrists from which he may select a provider for treatment of his compensable depression.

*Stellate Ganglion Block*

Whether Mr. Montgomery is entitled to undergo the nerve block recommended by Dr. Blake pits the differing opinions of the authorized treating physician and a Utilization Review physician on what constitutes reasonable and necessary treatment of Mr. Montgomery's left-shoulder injury. Since the Utilization Review physician invoked his interpretation of the ODG treatment guidelines in support of his opinion, the Court analyzes the issue in view of the Workers' Compensation Appeals Board's decision in *Morgan v. Macy's*, 2016 TN Wrk. Comp. App. Bd. LEXIS 39, at *15-17 (Aug. 31, 2017).

In *Morgan*, the Appeals Board recognized the presumption under Tennessee Code Annotated section 50-6-204(a)(3)(H) in favor of the medical necessity of "any treatment recommended by a physician or chiropractor selected pursuant to this subdivision (a)(3) or by referral, if applicable." *Id.,* at *15. The Board went on to hold that the presumption in favor of the authorized physician's treatment recommendation must be rebutted by clear and convincing evidence if the employee shows the recommended treatment follows the statutory treatment guidelines. Otherwise, the employer can rebut the presumption by a preponderance of the evidence.

Here, Mr. Montgomery did not establish that Dr. Blake's recommendation for a diagnostic stellate ganglion block followed the ODG treatment guidelines. For this reason, Mitchell can rebut the presumption in favor of the necessity of the recommended treatment by a preponderance of the evidence. Upon reviewing the evidence, the Court holds that Mr. Montgomery will likely prevail at trial in showing that the nerve block recommended by Dr. Blake constitutes reasonable and necessary treatment of his compensable injury.

In reviewing expert testimony, the Court may consider the qualifications of the experts, the circumstances of their evaluation, the information available to them, and the evaluation of the importance of that information by other experts. The Court has the discretion to conclude that the opinion of one expert should be accepted over that of another expert because it contains the more probable explanation. *Owens v. Sitters, Etc.,* 2018 TN Wrk. Comp. App. Bd. LEXIS 26, at *18-19 (May 29, 2019).

Here, the Court holds that Mitchell did not overcome the statutory presumption of necessity afforded Dr. Blake's recommendation of a diagnostic stellate ganglion block.

6

In support of this holding, the Court considered that Dr. Blake has treated Mr. Montgomery on numerous occasions, as opposed to making treatment decisions based solely on a review of records as did Dr. Cain. Further, the Court considered the fact that both treating physicians, Drs. Miller and Blake, made differential diagnoses of CRPS after surgery, physical therapy, prescription of non-opioid medication, injections, and long-term prescription of opioid medication failed to alleviate Mr. Montgomery's left-shoulder pain. Finally, the Court considered Dr. Blake's assessment that a diagnostic block to determine if Mr. Montgomery does suffer from CRPS, which can be treated without opioid therapy, is reasonable when cast against the current long-term use of opioids Mr. Montgomery endures.

In view of the above, Mitchell shall promptly authorize and schedule the diagnostic stellate ganglion block recommended by Dr. Blake.

*Temporary Disability Benefits*

Finally, the Court addresses Mr. Montgomery's claim for temporary disability benefits. In *Barrett v. Lithko Contracting, Inc.,* 2016 TN Wrk. Comp. App. Bd. LEXIS 70, at *9 (June 17, 2016), the Workers' Compensation Appeals Board adopted the holding of the Supreme Court in *Carter v. First Source Furniture Grp.,* 92 S.W.3d 367, 368 (Tenn. 2002), that "an employee's termination due to a violation of a workplace rule may relieve an employer of its obligation to pay temporary disability benefits if the termination was related to the workplace violation." Under this authority, an injured employee is not entitled to temporary disability benefits if he is terminated for cause and the employer would have accommodated the restrictions assigned.

Here, the Court holds that Mr. Montgomery failed to establish that he will likely prevail at trial in proving his entitlement to temporary disability benefits. The Court holds that Mitchell had the right to terminate Mr. Mitchell for overstaying his ten-minute break by thirty-eight minutes because he was asleep. The Court holds that a company rule against sleeping on the job is reasonably related to the efficient operation of an employer's business, and here, Mitchell had good cause to terminate Mr. Montgomery for violation of the rule.

The Court finds unpersuasive Mr. Montgomery's argument that the medication he took for his work injury caused him to be uncontrollably drowsy and should excuse his violation of the company rule. Mr. Montgomery presented no medical evidence that the prescription medication for his injury caused him to sleep uncontrollably. Further, the Court holds that Mitchell would have accommodated Mr. Montgomery's restrictions as it was doing at the time he was terminated. In that situation, had he not been terminated for cause, he would have earned his full salary and, of course, not been entitled to temporary disability benefits.

7

**IT IS, THEREFORE, ORDERED** as follows:

1. Mitchell shall promptly provide Mr. Montgomery a panel of psychologists and/or psychiatrists from which he can select a provider for authorized psychological care.

2. Mitchell shall promptly authorize Dr. Blake to schedule the diagnostic stellate ganglion block he prescribed.

3. Mr. Montgomery's claims for cervical care and temporary disability benefits are denied at this time.

4. This matter is set for a Status Hearing on **July 15, 2019, at 1:30 p.m.** Eastern Time. You must call (615) 741-3061or toll-free at (855) 747-1721 to participate in the Status Hearing. You must call on the scheduled date and time to participate. Failure to call in may result in a determination of the issues without your further participation.

5. **Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2018). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.**

6. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471 or (615) 532-1309.

**ENTERED April 23, 2019.**

**Judge Thomas Wyatt**
**Court of Workers' Compensation Claims**

8

# APPENDIX

Exhibits: The Court introduced the following documentary exhibits into evidence:

1. Amended Affidavit of Anthony Montgomery
2. Transcript of the deposition of Dr. John Blake, with attached medical records
3. Medical records of Dr. Benjamin Miller
4. Utilization Review records of Dr. James Cain
5. Report of Dr. James Little
6. Separation Notice
7. Photograph of Mr. Montgomery in Mitchell's breakroom
8. Transcript of the deposition of Anthony Montgomery

Technical record: The Court considered the following filings of the parties:

1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Order Granting Leave to Add Subsequent Injury and Vocational Recovery Fund
4. Request for Expedited Hearing
5. Notice of Expedited Hearing
6. Subsequent Injury and Vocational Recovery Fund's Expedited Hearing Statement
7. Notice of Mitchell to Rely on Expedited Hearing Statement of the Subsequent Injury and Vocational Recovery Fund
8. Supplemental Expedited Hearing Statement of the Subsequent Injury and Vocational Recovery Fund

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on April 23, 2019.

| Name | Certified Mail | Via Email | Email Address |
|---|---|---|---|
| Christopher Markel Employee Attorney | | X | cmarkel@markelfirm.com jdickey@markelfirm.com |
| C. Douglas Dooley Employer Attorney | | X | Doug.dooley@leitnerfirm.com |
| Ronald McNutt Subsequent Injury Fund | | X | Ronald.mcnutt@tn.gov |

w/permission JP

**PENNY SHRUM, COURT CLERK**
wc.courtclerk@tn.gov

10



<u>Expedited Hearing Order Right to Appeal</u>:

If you disagree with this Expedited Hearing Order, you may appeal to the Workers' Compensation Appeals Board. To appeal an expedited hearing order, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within seven business days* of the date the expedited hearing order was filed. When filing the Notice of Appeal, you must serve a copy upon all parties.

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of the appeal.**

3. You bear the responsibility of ensuring a complete record on appeal. You may request from the court clerk the audio recording of the hearing for a $25.00 fee. If a transcript of the proceedings is to be filed, a licensed court reporter must prepare the transcript and file it with the court clerk *within ten business days* of the filing the Notice of Appeal. Alternatively, you may file a statement of the evidence prepared jointly by both parties *within ten business days* of the filing of the Notice of Appeal. The statement of the evidence must convey a complete and accurate account of the hearing. The Workers' Compensation Judge must approve the statement before the record is submitted to the Appeals Board. If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. If you wish to file a position statement, you must file it with the court clerk within *ten business days* after the deadline to file a transcript or statement of the evidence. The party opposing the appeal may file a response with the court clerk *within ten business days* after you file your position statement. All position statements should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



## EXPEDITED HEARING NOTICE OF APPEAL

Tennessee Division of Workers' Compensation
www.tn.gov/labor-wfd/wcomp.shtml
wc.courtclerk@tn.gov
1-800-332-2667

**Docket #:** _____

**State File #/YR:** _____

**Employee** _____

v.

**Employer** _____

### Notice

Notice is given that _____

[List name(s) of all appealing party(ies) on separate sheet if necessary]

appeals the order(s) of the Court of Workers' Compensation Claims at _____

_____ to the Workers' Compensation Appeals

Board. [List the date(s) the order(s) was filed in the court clerk's office]

**Judge** _____

### Statement of the Issues

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

### Additional Information

**Type of Case** [Check the most appropriate item]

- ☐ Temporary disability benefits
- ☐ Medical benefits for current injury
- ☐ Medical benefits under prior order issued by the Court

### List of Parties

**Appellant (Requesting Party):** _____ At Hearing: ☐ Employer ☐ Employee

Address: _____

Party's Phone: _____ Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Address: _____ Phone: _____

Attorney's City, State & Zip code: _____

Attorney's Email: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____  SF#: _____  DOI: _____

## Appellee(s)

**Appellee (Opposing Party):** _____ At Hearing: ☐Employer ☐Employee

Appellee's Address: _____

Appellee's Phone: _____ Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Address: _____ Phone: _____

Attorney's City, State & Zip code: _____

Attorney's Email: _____

*\* Attach an additional sheet for each additional Appellee \**

## CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Expedited Hearing Notice of Appeal by First Class, United States Mail, postage prepaid, to all parties and/or their attorneys in this case in accordance with Rule 0800-02-22.01(2) of the Tennessee Rules of Board of Workers' Compensation Appeals on this the _____ day of _____, 20 ___

[Signature of appellant or attorney for appellant]  _____



**Tennessee Bureau of Workers' Compensation**
**220 French Landing Drive, I-B**
**Nashville, TN 37243-1002**
**800-332-2667**

### AFFIDAVIT OF INDIGENCY

I, _____, having been duly sworn according to law, make oath that because of my poverty, I am unable to bear the costs of this appeal and request that the filing fee to appeal be waived. The following facts support my poverty.

1. Full Name:_____    2. Address: _____

3. Telephone Number: _____    4. Date of Birth: _____

5. Names and Ages of All Dependents:

_____  Relationship: _____

_____  Relationship: _____

_____  Relationship: _____

_____  Relationship: _____

6. I am employed by: _____

   My employer's address is: _____

   My employer's phone number is: _____

7. My present monthly household income, after federal income and social security taxes are deducted, is:

$ _____

8. I receive or expect to receive money from the following sources:

| | | | |
|---|---|---|---|
| AFDC | $ _____ per month | beginning _____ |
| SSI | $ _____ per month | beginning _____ |
| Retirement | $ _____ per month | beginning _____ |
| Disability | $ _____ per month | beginning _____ |
| Unemployment | $ _____ per month | beginning _____ |
| Worker's Comp. | $ _____ per month | beginning _____ |
| Other | $ _____ per month | beginning _____ |

9. My expenses are:

Rent/House Payment $ _____ per month    Medical/Dental $ _____ per month

| | | | | |
|---|---|---|---|---|
| Groceries | $ _____ per month | Telephone | $ _____ per month |
| Electricity | $ _____ per month | School Supplies | $ _____ per month |
| Water | $ _____ per month | Clothing | $ _____ per month |
| Gas | $ _____ per month | Child Care | $ _____ per month |
| Transportation | $ _____ per month | Child Support | $ _____ per month |
| Car | $ _____ per month | | |
| Other | $ _____ per month (describe: _____ ) | | |

10. Assets:

| | | |
|---|---|---|
| Automobile | $ _____ | (FMV) _____ |
| Checking/Savings Acct. | $ _____ | |
| House | $ _____ | (FMV) _____ |
| Other | $ _____ | Describe: _____ |

11. My debts are:

| Amount Owed | To Whom |
|---|---|
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |

**I hereby declare under the penalty of perjury that the foregoing answers are true, correct, and complete and that I am financially unable to pay the costs of this appeal.**

_____

APPELLANT

Sworn and subscribed before me, a notary public, this

_____ day of _____, 20_____.

_____

NOTARY PUBLIC

My Commission Expires: _____

LB-1108 (REV 11/15)                                              RDA 11082