**FILED**

**December 11, 2015**

TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD

Time: 2:45 P.M.



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | |
|---|---|
| Cedric Jones ) | Docket No. 2015-06-0332 |
| ) | |
| v. ) | |
| ) | State File No. 18707-2015 |
| Crencor Leasing and Sales ) | |
| ) | |
| ) | |
| Appeal from the Court of Workers' ) | |
| Compensation Claims ) | |
| Joshua Davis Baker, Judge ) | |

---

### Affirmed in Part, Reversed in Part, and Remanded – Filed December 11, 2015

---

The employee injured his left shoulder at work when a ladder fell on him. The employer provided medical benefits but denied that the employee was entitled to temporary disability benefits because he was terminated for cause. The employee alleged that the termination for cause was a pretext and that he was fired because of excessive absences arising from his work-related injury. The employee also asserted that the employer had failed to provide appropriate light-duty work. Following an expedited hearing, the trial court determined that the employee was terminated for cause and that he did not come forward with sufficient evidence that the stated reason for his termination was pretextual. The trial court also determined that the employer could not have accommodated the employee's medical restrictions and awarded temporary disability benefits. Having carefully reviewed the record, we affirm in part, reverse in part, and remand the case.

Judge Timothy W. Conner delivered the opinion of the Appeals Board, in which Judge Marshall L. Davidson, III, and Judge David F. Hensley joined.

Michael L. Haynie, Nashville, Tennessee, for the employer-appellant, Crencor Leasing and Sales

Christopher Kim Thompson, Nashville, Tennessee, for the employee-appellee, Cedric Jones

1

## Factual and Procedural Background

Cedric Jones ("Employee"), a thirty-five-year-old resident of Davidson County, Tennessee, worked for Crencor Leasing and Sales ("Employer") as a lot attendant and automobile detailer. On March 9, 2015, Employee suffered a shoulder injury when a ladder fell on him. He received authorized medical treatment from Dr. Matthew Willis, who diagnosed a right shoulder AC joint sprain and a rotator cuff tear.

Employee returned to work following his injury, but was instructed by Dr. Willis not to use his right arm and not to drive. Employee testified that he was expected to perform his normal job duties with the exception of buffing cars. At a follow-up appointment with Dr. Willis on March 31, Employee was again instructed not to use his right arm; however, the driving restriction was lifted at that time. Employer's representative, David Carson, testified that Employee never complained to him that his post-accident work activities were outside his medical restrictions.

Following his medical appointment on April 7, Employee returned to the workplace and was informed Mr. Carson wanted to speak with him. The nature of this conversation is disputed by the parties. Employee alleged that Mr. Carson notified him he was being fired due to "missing too many days of work." Mr. Carson denies that he told Employee he was being fired for excessive absences, but instead fired him for misreporting work hours on his timesheet and "accepting money from the dealership that was not earned by him." Mr. Carson explained that he raised the timecard issue with Employee, who acknowledged the misreported time, but stated he "made a mistake."[1]

Moreover, Mr. Carson testified as follows with respect to the issue of work restrictions and possible accommodations:

> Q.  And had you not terminated him, would you have accommodated the restrictions or found work for him –
>
> A.  I would agree.
>
> Q.  – to work within Dr. Willis's restriction?
>
> A.  I was – yes. I would have. Absolutely.

---

[1] Mr. Carson testified that he reviewed two timecards on which Employee had reported working five full days, including at least one Saturday, while Mr. Carson knew that Employee was not present at work on all those days. When confronted with these discrepancies, Employee allegedly admitted that he had not worked on that Saturday and had missed time during the week for physical therapy appointments, but reported the time as worked. Employee testified that he did work that Saturday but admitted he missed time due to physical therapy appointments.

2

Q. Did he, Mr. Jones, ever come to you and say that he was being forced to work outside his restrictions?

A. No. It was obvious he was hurt. I mean, his arm was – no one demanded anything out of the ordinary that he is – that he would relay to anybody he couldn't do, he was not asked to. Period.

Q. Did he come to you and say he couldn't do something and he was being made to do something?

A. Never to me, no, sir.

Mr. Carson was specifically asked "what kind of light-duty work do you have available at Crencor?" Mr. Carson described "empty[ing] trash cans" and "dusting." Mr. Carson then testified, "we would have found something. We would have accommodated him. Crencor would have accommodated his work restrictions. Absolutely. Yes, sir. Never opposed to that."

Employee underwent surgery on May 11, 2015 and was released to return to work with restrictions as of May 15, 2015. Specifically, Employee was limited to no use of his injured arm, a two-pound lifting maximum, and "no activities beyond typical daily activities including eating, brushing of teeth, typing, or writing." Following an office visit on June 11, 2015, Dr. Willis adjusted the work restrictions to occasional use of the injured arm, no overhead work, no outstretched arm use, and no lifting over five pounds.

After being fired in April 2015, Employee found work "helping a friend" who operated a tire delivery business called Red Hot Express. He drove to tire dealerships, picked up tires and delivered them to other locations. Employee testified he was able to pick up and deliver the tires using only his uninjured arm. He worked approximately two months for the tire delivery service and was paid $150.00 per week.[2]

On May 28, 2015, Employee filed a Petition for Benefit Determination, seeking temporary disability benefits. After unsuccessful mediation efforts and the issuance of a Dispute Certification Notice, a Request for Expedited Hearing was filed on September 4, 2015. Following an evidentiary hearing on October 19, 2015, the trial court issued an order awarding temporary disability benefits. While the trial court determined that Employee's misreported time "qualifies as misconduct under ordinary workplace rules," the court nevertheless found that Employer "could not have accommodated his work restrictions" and that Employee was therefore entitled to temporary partial disability

---

[2] Although the dates of his post-termination employment with the tire delivery service were unspecified in the record, Employee testified that he worked for two months "between April 7, 2015 and September 1st." Such work necessarily would have included time after his May 11, 2015 surgery.

3

benefits. Employer timely appealed and the record was received by the Appeals Board Clerk on December 4, 2015.

**Standard of Review**

The standard of review we apply in reviewing a trial court's decision is statutorily mandated and limited in scope. Specifically, "[t]here shall be a presumption that the findings and conclusions of the workers' compensation judge are correct, unless the preponderance of the evidence is otherwise." Tenn. Code Ann. § 50-6-239(c)(7) (2014). The trial court's decision must be upheld unless the rights of a party "have been prejudiced because findings, inferences, conclusions, or decisions of a workers' compensation judge:

(A)     Violate constitutional or statutory provisions;
(B)     Exceed the statutory authority of the workers' compensation judge;
(C)     Do not comply with lawful procedure;
(D)     Are arbitrary, capricious, characterized by abuse of discretion, or clearly an unwarranted exercise of discretion;
(E)     Are not supported by evidence that is both substantial and material in the light of the entire record."

Tenn. Code Ann. § 50-6-217(a)(3) (2015). Like other courts applying the standards embodied in section 50-6-217(a)(3), we will not disturb the decision of the trial court absent the limited circumstances identified in the statute.

**Analysis**

*Eligibility for Temporary Disability Benefits and Termination for Cause*

An injured worker is eligible for temporary disability benefits if: (1) the worker became disabled from working due to a compensable injury; (2) there is a causal connection between the injury and the inability to work; and (3) the worker established the duration of the period of disability. *Simpson v. Satterfield*, 564 S.W.2d 953, 955 (Tenn. 1978). Temporary total disability benefits are terminated either by the ability to return to work or attainment of maximum recovery. *Id.* Temporary partial disability benefits, a category of vocational disability distinct from temporary total disability, is available when the temporary disability is not total. *See* Tenn. Code Ann. § 50-6-207(1)-(2) (2014). Specifically, "[t]emporary partial disability refers to the time, if any, during which the injured employee is able to resume some gainful employment but has not reached maximum recovery." *Williams v. Saturn Corp.*, No. M2004-01215-WC-R3-CV, 2005 Tenn. LEXIS 1032, at *6 (Tenn. Workers' Comp. Panel Nov. 15, 2005). Thus, in circumstances where the treating physician has released the injured worker to return to work with restrictions prior to maximum medical improvement, and the employer either

4

(1) cannot return the employee to work within the restrictions or (2) cannot provide restricted work for a sufficient number of hours and/or at a rate of pay equal to or greater than the employee's average weekly wage on the date of injury, the injured worker may be eligible for temporary partial disability.

However, even though an employee has a work-related injury for which temporary benefits are payable, the employer is entitled to enforce workplace rules. *Carter v. First Source Furniture Grp.*, 92 S.W.3d 367, 368 (Tenn. 2002). Thus, a termination due to a violation of a workplace rule may relieve an employer of its obligation to pay temporary disability benefits, provided the termination was related to the workplace violation. *See Marvin Windows of Tenn. v. Gardner*, No. W2011-01479-WC-R3-WC, 2012 Tenn. LEXIS 403, at *9 (Tenn. Workers' Comp. Panel June 8, 2012). When confronted with such a case, courts must "consider the employer's need to enforce workplace rules and the reasonableness of the contested rules." *Id.* at *10. An employer will not be penalized for enforcement of a policy if the court determines "(1) that the actions allegedly precipitating the employee's dismissal qualified as misconduct under established or ordinary workplace rules and/or expectations; and (2) that those actions were, as a factual matter, the true motivation for the dismissal." *Durham v. Cracker Barrel Old Country Store, Inc.*, No. E2008-00708-WC-R3-WC, 2009 Tenn. LEXIS 3, at *9 (Tenn. Workers' Comp. Panel Jan. 5, 2009).

In the present case, the critical issues are whether Employer came forward with evidence supporting its position that Employee was terminated for violating a workplace policy and whether Employee came forward with evidence that the stated reason for termination was merely a pretext. The trial court concluded that Employee's submission of inaccurate timecards was a violation of an ordinary workplace rule and this violation sufficiently supported the termination. The court further found that Employee did not establish that his termination was pretextual. We agree. Mr. Carson's testimony supported Employer's position that Employee misreported his time and gave no reasonable explanation for the error. Employee admitted that he misreported his working hours, but attributed it to a simple mistake, even though some of the misreported time was on Saturdays when he did not work at all. Moreover, Employee offered insufficient evidence that the stated basis for the termination was pretextual, other than his uncorroborated statement that Mr. Carson told him he had missed too much work. The preponderance of the evidence supports the trial court's determination on this issue.

*Accommodation of Work Restrictions*

With respect to whether Employer could have accommodated Employee's post-surgical work restrictions, we respectfully disagree with the trial court's determination and find the preponderance of the evidence supports Employer's position on this issue. The trial court based its determination, in part, on Mr. Carson's description of the types of light-duty tasks which could have been offered to Employee, including emptying trash

5

cans and dusting. Given Employee's testimony that he was employed to deliver tires for two months after his termination, the preponderance of the evidence does not support a finding that Employee would have been unable to empty trash cans and dust, even with the use of only one arm. Moreover, the trial court's determination disregarded Mr. Carson's unrefuted testimony that "we would have found something. We would have accommodated him. Crencor would have accommodated his work restrictions. Absolutely. Yes, sir. Never opposed to that." Thus, the preponderance of the evidence supports a finding that, but for Employee's termination for cause, Employer would have had the opportunity to offer Employee a light-duty position after his surgery within his medical restrictions. Therefore, based on the evidence presented at the expedited hearing, Employee has not established entitlement to temporary disability benefits.

## Conclusion

We find the preponderance of the evidence weighs in favor of the trial court's determination that Employee was terminated for cause, but against the trial court's determination that Employer could not have accommodated Employee's post-surgical work restrictions. Because the trial court's determination on this latter issue is contrary to Tennessee Code Annotated section 50-6-217(a)(3)(A) and (E) (2015), the order is affirmed in part and reversed in part, and the case is remanded to the trial court for any further proceedings that may be necessary.

Timothy W. Conner, Judge
Workers' Compensation Appeals Board

6

FILED

December 11, 2015

TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD

Time: 2:45 P.M.



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| Cedric Jones | ) | Docket No. 2015-06-0332 |
| | ) | |
| v. | ) | |
| | ) | State File No. 18707-2015 |
| Crencor Leasing and Sales | ) | |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 11th day of December, 2015.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Email Address |
|---|---|---|---|---|---|---|
| **Kim Thompson** | | | | | X | kthompson@tlgpllc.com |
| **Michael Haynie** | | | | | X | mhaynie@manierherod.com |
| **Joshua Davis Baker** | | | | | X | Via Electronic Mail |
| **Kenneth M. Switzer, Chief Judge** | | | | | X | Via Electronic Mail |
| **Penny Shrum, Clerk, Court of Workers' Compensation Claims** | | | | | X | Penny.Patterson-Shrum@tn.gov |

Matthew Salyer
Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-1606
Electronic Mail: Matthew.Salyer@tn.gov