FILED

May 18, 2017

TN COURT OF
WORKERS'
COMPENSATION
CLAIMS

Time 8:20 AM

## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT MEMPHIS

| | | |
|---|---|---|
| **MIGUEL BETANCES,** | ) | **Docket No. 2016-08-0883** |
| **Employee,** | ) | |
| **v.** | ) | **State File No. 59040-2016** |
| **BROCK SERVICES, LLC,** | ) | |
| **Employer.** | ) | **Judge Allen Phillips** |

## EXPEDITED HEARING ORDER
## FOR TEMPORARY DISABILITY BENEFITS

This case came before the undersigned Workers' Compensation Judge on April 26, 2017, upon the Request for Expedited Hearing filed by Miguel Betances. Mr. Betances requested temporary disability benefits from October 5, 2016, and ongoing. Brock contended he was not entitled to the requested benefits because it terminated him for violation of workplace rules, namely its attendance policy. Accordingly, the central legal issue is whether Mr. Betances came forward with sufficient evidence to demonstrate a likelihood of success at a full hearing on the merits on the issue of temporary disability benefits. The Court holds he did and orders Brock to provide the requested temporary disability benefits.

### History of Claim

On July 18, 2016, Mr. Betances injured his back at work, and Brock provided medical treatment with Concentra. A physician at Concentra restricted his activities, and Mr. Betances returned to work for Brock.

Mr. Betances continued to work through July 29. He claimed that, throughout this time, his supervisor, Felix Ortiz, "threatened" him with termination "whenever [he] complained of pain." Mr. Betances testified that Mr. Ortiz specifically told him on July 28 that he would "get rid of me." On August 1, Mr. Betances testified Mr. Ortiz "made good" on that threat and sent him home at the direction of Marcus House, Brock's project manager. Mr. Ortiz took the Brock identification badge issued to Mr. Betances and told

him not to return. Mr. Ortiz also told Mr. Betances to return to the Dominican Republic to seek medical treatment. However, Brock asked Mr. Betances to return to the jobsite on approximately August 10, for what Mr. Betances described as an "investigation" of his accident; otherwise, Mr. Betances never returned.

Mr. Ortiz, Brock's worksite superintendent, provided an affidavit stating he never told Mr. Betances that "he was suspended for any reason," or denied him medical treatment. Instead, he stated Mr. Betances simply stopped reporting to work as of August 1.

Mr. Ortiz stated Brock administratively terminated Mr. Betances because he did not return to work between August 1 and August 14. Mr. Ortiz stated that Mr. Betances was to report to him before 9:00 a.m. "if he was not going to be able to work [on a given] day for any reason," and if an employee "needs to take a longer period of time off, [they] are instructed to notify me of the time they wish to take off [and I could notify the corporate office] so they remain in a hold status rather than be administratively terminated." Mr. Ortiz stated that all of Brock's attendance policies are contained in an employee handbook, a document Mr. Betances received as evidenced by a receipt he signed. Mr. Ortiz stated in his affidavit that "it is [Brock's] policy to provide light duty work to injured employees if possible," and that the light duty position "would have remained available to Mr. Betances throughout his medical treatment if he had continued to come to work."

Brock paid Mr. Betances his regular wages from August 1 through August 14. It also paid him what it called "temporary total disability" (TTD) benefits beginning August 1, and continuing to October 5.

On September 20, Brock sent Mr. Betances a letter reading as follows:

We have been advised that Dr. Varner has continued your release to return to work on restricted work duty medical release status. This letter is to advise you that we do have work available for you at our Brock worksite and request you return to work. We will work with you on any of the work restrictions and medical appointment schedules you may continue to have.

You must respond to this letter by calling Allison Edwards at 901-369-0360 within five (5) days of receipt of this letter in order to discuss your return to work schedule with Brock Services. If you do not call Ms. Edwards or return to work as requested, you may not continue to receive any temporary disability benefits.

We look forward to your return to work with us.

2

As of approximately September 24, Mr. Betances returned to the Dominican Republic for personal reasons. Hence, he testified he did not receive the September 20 letter until sometime in October but claimed he called Brock within five days of its receipt. Brock's Human Resources Coordinator, Allison Edwards, confirmed Mr. Betances called her on October 18, but on October 19, Ms. Edwards "informed Mr. Betances that the position offered to him on September 20 was no longer available" per Glenda Martin, Brock's Regional Claims Manager. Ms. Edwards also stated Brock's attendance policy provides any employee who fails to "report to work without notification or authorization for three days or more" is deemed to have voluntarily resigned.

Marcus House was Brock's project manager at the location where Mr. Betances worked. He testified by affidavit that Brock "administratively terminated" Mr. Betances on August 14 for "violation of Brock's internal attendance policy." He denied ever "suspending" Mr. Betances. Mr. House stated he understood that "Mr. Betances did not respond to [the September 20 letter] until over month after it was sent and by that time the position was no longer available." Mr. House completed an "Employee Exit Form" on October 20 recording that Mr. Betances had "walked off" or "abandoned" his job as of that date.

Mr. Betances continued medical care at Concentra until July 29, his last day at Brock. At that time, the Concentra provider noted Brock would "no longer pay for PT" and that, because the "case [was] not progressing," he would refer Mr. Betances to an orthopedic physician. Mr. Betances then began treatment with Dr. Varner, an orthopedist, who continued to see him until Mr. Betances went to the Dominican Republic.

Mr. Betances now sees Dr. Parsioon, who took him off work as of January 26, 2017. He intends to perform a lumbar discectomy on Mr. Betances.

Since leaving Brock, Mr. Betances worked a second job at Kinko's in the evenings, working fifteen hours per week and earning $9.25 per hour. He described the job as involving no physical exertion. After January 26, when Dr. Parsioon completely excluded him from work, Mr. Betances quit working at Kinko's and has not worked anywhere else. He states he currently awaits back surgery and is supported by his wife's income and that of his oldest son.

Because Brock failed to return him to work in October, Mr. Betances claims temporary disability for the period beginning October 5, 2016, when the parties agree Brock last paid him TTD, through the present, and ongoing.

Brock contends it owes Mr. Betances no further temporary disability because it properly terminated him for failing to report to work. Furthermore, Brock argues it had no light duty position available to him due to his delay in calling until one month after its September 20 letter.

## Findings of Fact and Conclusions of Law

### *Standard applied*

Because this case is in a posture of an Expedited Hearing, Mr. Betances need not prove every element of his claim by a preponderance of the evidence. Instead, he must come forward with sufficient evidence from which the Court can determine he is likely to prevail at a hearing on the merits. Tenn. Code Ann. § 50-6-239(d)(1) (2016).

### *Applicable authority*

Though the parties argued the case only in context of Mr. Betances' entitlement to TTD, Tennessee law recognizes two types of temporary disability benefits.[1] First, Mr. Betances might be entitled to TTD if he proves: (1) he was totally disabled from working as a result of his compensable injury; (2) a causal connection between that injury and his inability to work; and (3) the duration of his disability. *Young v. Young Elec. Co.,* 2016 TN Wrk. Comp. App. Bd. LEXIS 41, at *12 (Sept. 14, 2016). Second, if Mr. Betances was not totally disabled during any period for which he requests benefits, then he might be entitled to temporary partial disability (TPD) benefits, which were payable during the time Mr. Betances was able to resume some gainful employment but had not reached his maximum recovery. *Barrett v. Lithko Contracting, Inc.,* 2016 TN Wrk. Comp. App. Bd. LEXIS 70, at *8 (June 27, 2016). Mr. Betances' potential recovery of temporary benefits may be separated into two distinct periods.

### *Entitlement to temporary partial disability*

First, from October 5, 2016, the last date he was paid temporary benefits, until January 26, 2017, when an authorized physician totally excluded him from work, Mr. Betances might have been eligible for TPD. If he were, the amount of compensation would equal 66 2/3% of the difference in his average weekly wage at the time of injury and the amount he might have earned in his partially disabled condition. Tenn. Code Ann. § 50-6-207(2) (2016). This calculation must consider two factors: first, Brock's right to terminate Mr. Betances for violation of its workplace rules; and second, Mr.

---

[1] The Court notes Brock paid what it called "TTD" through October 5. However, when looking to the difference between Mr. Betances' average weekly wages and what he was able to earn in his partially disabled condition, the net amount of TPD paid for that period is the same. *See* Tenn. Code Ann. § 50-6-207(2) (2016).

4

Betances' testimony that he earned some wages at a part-time job during the period in question.

Even though Mr. Betances had a compensable injury for which temporary benefits are payable, Brock is entitled to enforce its workplace rules. *Barrett*, at *9, *citing Carter v. First Source Furniture Grp.*, 92 S.W.3d 367, 368 (Tenn. 2002). Mr. Betances' termination due to a violation of a workplace rule may relieve Brock of its obligation to pay temporary disability benefits if the termination was related to the rule violation. *Id.* For Brock to be relieved of its payment obligation, the Court must find, "(1) that the actions allegedly precipitating [Mr. Betances'] dismissal qualified as misconduct under established or ordinary workplace rules and/or expectations; and (2) that those actions were, as a factual matter, the true motivation for [his] dismissal." *Id.*

Guided by this authority, the Court will analyze the facts chronologically. First, the parties agreed Mr. Betances injured his back on July 18, 2016, and that he continued to work through July 29. However, the controlling events occurred afterward and are the ones about which the parties disagree.

Specifically, Brock contended Mr. Betances provided no excuse for his failure to return to work after August 1, and that he did not request a leave of absence. These failures constituted a violation of Brock's attendance policy and served as the basis for Brock's "administrative termination" of Mr. Betances as of August 14.

Conversely, Mr. Betances claimed Brock, through Mr. Ortiz, essentially fired him as of August 1. He testified that Mr. Ortiz "threatened" him on several occasions and stated he should seek medical care in his home country.

Having directly observed Mr. Betances' demeanor, the Court finds he testified confidently and without reservation regarding his "suspension" or "firing" as of August 1. The Court accredits Mr. Betances' version of the events and finds him credible. Further, when considered against the affidavits of the Brock employees and the evidence discussed further within this order, the Court also finds the evidence preponderates in favor of Mr. Betances' position.

Namely, the Court finds the evidence preponderates against Brock's position that it "terminated" Mr. Betances on August 14. Brock offered no separation notice memorializing any termination on that date, it continued to pay temporary disability benefits despite the alleged termination, and it corresponded with Mr. Betances on September 20 regarding a return to work. All of these facts, individually and collectively, support a finding that Brock did not terminate Mr. Betances on August 14, and the Court holds as a matter of law that Brock cannot avoid paying benefits if it did not enforce its attendance policy by actually terminating Mr. Betances.

5

Further, the Court considers Mr. Ortiz' testimony that light duty "would have remained available to Mr. Betances throughout his medical treatment if he had continued to come to work" to be directly contrary to Ms. Edwards' statement that, after speaking to Brock's claim manager, the light duty position "was no longer available." Notably, it was the claim manager, and not a Brock employee at the job site, who directed Ms. Edwards to advise Mr. Betances that the position was no longer available. Likewise, though Mr. House stated Mr. Betances' position was no longer available on October 18, he offered no explanation as to why Brock could no longer continue the light duty promised by Mr. Ortiz. In short, it is inconsistent for Brock to claim light duty would have remained available to Mr. Betances throughout his medical treatment while at the same time asserting the position became unavailable in October.

Brock attempted to explain this inconsistency by arguing Mr. Betances failed to call Ms. Edwards within five days of its September 20 letter, instead waiting until approximately one month later. However, the only proof in the record as to when Mr. Betances actually *received* the letter was his testimony that he received it sometime in October upon his return from the Dominican Republic. Again, having found Mr. Betances' testimony credible, the Court finds he made a reasonable attempt to return to work by calling Brock in October.

In summary, the Court finds Brock did not accommodate Mr. Betances' light duty restrictions or provide a justifiable reason for not doing so. It could have, but did not, enforce its attendance rule in August. Mr. Betances has established he would likely prevail at a trial on the merits regarding whether he had a disability that preventing him from earning his average weekly wage, that the partial disability is related to his injury, and the duration of that partial disability. *See Young*, at *12. Mr. Betances is entitled to temporary partial disability beginning October 5, 2016.

The parties stipulated Brock paid temporary disability benefits to Mr. Betances from August 1 to October 5. Because Brock paid Mr. Betances his regular wages from August 1 to August 14, the Court finds it is entitled to a credit for those two weeks. However, the Court finds Mr. Betances is entitled to temporary *partial* benefits for the period of August 14 to October 5.

Mr. Betances' admission that he worked a second job until January 2017 complicates the Court's calculation of TPD. The uncontroverted proof is that Mr. Betances earned $9.25 per hour for fifteen hours each week from October 5, 2016, until Dr. Parsioon totally restricted him from work on January 26, 2017. Based upon this proof, the Court determines he earned $138.75 per week for the subject period ($9.25 x 15 hours per week). When considering those earnings, the Court finds the net TPD to which Mr. Betances is entitled from October 5, 2016, through January 26, 2017, equals

6

$158.48 per week. The Court calculates this amount by utilizing an average weekly wage of $376.46[2] and considering Mr. Betances was able to earn $138.75 per week in his partially disabled condition. ($376.46 - $138.75 x 66 2/3 %). *See* Tenn. Code Ann. § 50-6-207(3) (2016).

*Entitlement to temporary total disability benefits*

The parties agree Mr. Betances suffered a compensable injury for which Brock continues to provide medical benefits. Likewise, an approved provider, Dr. Parsioon, has totally restricted Mr. Betances from work as of January 26, 2017. Hence, for the period beginning January 26 and ongoing, Mr. Betances established: (1) he was totally disabled from working as the result of his compensable injury; (2) a causal connection between his injury and his inability to work; and (3) the duration of his disability. *Young*, at *12.

For the period of January 26, 2017, forward, until an approved physician releases him to return to work or places him at maximum medical improvement, Mr. Betances is entitled to TTD at the rate of $250.97 per week.

**IT IS, THEREFORE, ORDERED** as follows:

1. Mr. Betances shall receive accrued temporary partial disability benefits of $2,580.96 from Brock for the period of October 5, 2016, through January 26, 2017, a period of sixteen weeks and one day, at the rate of $158.48 per week. Mr. Betances' counsel is entitled to a fee of twenty percent of this recovery.

2. Mr. Betances shall receive accrued temporary total disability benefits of $3,943,81 at the rate of $250.97 from Brock for the period of January 27, 2017, through the date of this order, a period of fifteen weeks and five days. Counsel is also entitled to a fee of twenty percent of this recovery. These payments of TTD shall continue until an approved medical provider releases him to return to work or places him at maximum medical improvement.

3. This matter is set for a Scheduling (Status) Hearing on **Thursday, August 10, 2017, at 10:00 a.m. Central time. You must call toll-free at 731-422-5263 or toll-free 855-543-5038 to participate in the Hearing.**

4. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry

---

[2] The average weekly wage of $376.46 is based upon Brock's "Pre-Hearing Statement" in which it states the compensation rate for TTD is $250.97 per week. The Court views this as an admission regarding the compensation rate. Mr. Betances neither contested this amount nor offered evidence on the issue. If the parties disagree as to the Court's calculations, regarding TPD or TTD, either or both might file an appropriate motion or later resolve any discrepancies by an offset or credit against future payment of benefits.

of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2016). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471 or (615) 532-1309.

**ENTERED this the 18th day of May, 2017.**

_____
**Allen Phillips, Judge**
**Court of Workers' Compensation Claims**

## APPENDIX

Exhibits:

1. Medical Records of Concentra
2. Medical Records of Dr. James Varner
3. Medical Records of Dr. Fereidoon Parsioon
4. September 20, 2016 letter from Brock to Mr. Betances regarding returning to work
5. Tracking Information for "Postal Product" (identification only)
6. Employee's Receipt of Employee Handbook
7. Affidavit of Marcus House, with attachments
8. Affidavit of Allison Edwards, with attachments
9. Affidavit of Felix Ortiz

Technical record:

1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing with supporting affidavit
4. Employer's Pre-Hearing Statement In Response to Employee's Request For Expedited Hearing
5. Consent Order Substituting Counsel
6. Employer's Written Objection to Introduction of Certain Documents Submitted to Mediating Specialist

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 18th day of May, 2017.

| Name | Via Email | Service Sent To: |
|------|-----------|------------------|
| John A. Field, Esq., Attorney for Employee | X | feildlawoffice@gmail.com |
| Marianna L. Jablonski , Esq., Attorney for Employer | X | mjablonski@wimberlylawson.com |


_Penny Shrum_

**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**

9