**FILED**

**March 6, 2018**

**IN COURT OF
WORKERS' COMPENSATION
CLAIMS**

**Time 2:01 PM**



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT CHATTANOOGA

| | | |
|---|---|---|
| **Wesley Burrison,** | ) | **Docket No.: 2017-01-0408** |
| **Employee,** | ) | |
| **v.** | ) | |
| **Allegis Group,** | ) | **State File No.: 24642-2017** |
| **Employer,** | ) | |
| **And** | ) | |
| **Insurance Company of North America,** | ) | **Judge Audrey Headrick** |
| **Carrier.** | ) | |

---

## EXPEDITED HEARING ORDER

---

This matter came before the Court on February 15, 2018, on Wesley Burrison's Request for Expedited Hearing. The central legal issue is whether Mr. Burrison is likely to establish at trial that he is entitled to temporary partial disability benefits.[1] For the reasons set forth below, the Court holds he is entitled to the requested benefits.

### History of Claim

Allegis Group, a temporary agency, hired Mr. Burrison on February 22, 2017, and placed him at Volkswagen as a production worker.[2] He injured his back on April 5 while manually lifting a heavy transfer case. Mr. Burrison went to the Volkswagen On-Site

---

[1] The Dispute Certification Notice (DCN) only certified the issues of temporary disability benefits and mileage reimbursement. The parties voluntarily resolved the mileage issue. However, since the parties' prehearing briefs addressed a dispute regarding medical benefits, the Court advised that it could not hear evidence on that issue since it was not a certified issue in the DCN. After the hearing, the Court entered an Order referring the claim to mediation.

[2] The parties referred to Allegis Group as Aerotek, and the Court infers they are affiliated.

1

Medical Clinic (OMC) during his shift, where he selected Dr. Allen Von Gremp from a panel.[3]

Warren Rafiel, Human Resources Representative for Allegis Group, met with Mr. Burrison for a corrective action meeting on April 10. Mr. Rafiel notified Mr. Burrison that he was on level two of a four-level disciplinary policy. Mr. Burrison produced work excuses for March 16-17, March 27-29, and April 5-6. (Ex. 10.) Mr. Rafiel explained that an employee is "at the end of [his] assignment with [Allegis Group]" [terminated] "when he reaches the fourth level."

One day later, Mr. Rafiel held a corrective action meeting with Mr. Burrison and his Volkswagen supervisor, Ken Pippin, to notify Mr. Burrison he was on level three for job performance. Mr. Rafiel described four separate incidents in the Corrective Action form. The incidents involved taking unscheduled bathroom breaks, leaving the production line without notifying a team leader or supervisor, and failing to work in Pitch 9 with coworker Lamika Ball. Mr. Rafiel included the Pitch 9 incident in the "Team Member Comments" section, but Mr. Burrison disputed the incident was described on the form when he signed it.

Mr. Burrison testified he takes Metformin, since he is diabetic, which causes him to have diarrhea and forces him at times to use the restroom unexpectedly. He stated he had a private conversation with Mr. Pippin and explained his medical issue. Mr. Burrison stated Mr. Pippin told him he needed "to man up and hold it 'til break time." Mr. Rafiel acknowledged that Mr. Burrison raised his medical issue during the April 11 corrective action meeting, but it was not a sufficient excuse. Further, Mr. Burrison also explained his refusal to work in Pitch 9 was unrelated to a previous dispute involving a coworker.

As for the events of April 11, Mr. Rafiel testified Mr. Burrison said he did not feel comfortable training on Pitch 9 with Ms. Ball. Mr. Rafiel stated that Mr. Burrison also expressed concerns about handling the transfer case on Pitch 9. Mr. Pippin instructed Mr. Burrison to use the overhead crane and notify a team leader if he had any problems. Mr. Rafiel testified that Mr. Burrison initially started walking towards the line and then returned telling him, "I don't need this s**t." He stated he asked Mr. Burrison, "Are you telling me you're refusing to go to your pitch and train?" Mr. Burrison responded, "Yes." Mr. Rafiel then asked for Mr. Burrison's badge and walked him out. Further, Mr. Rafiel stated that Mr. Burrison "chose to resign before getting to the fourth level."

Mr. Rafiel confirmed that Allegis Group prepared limited documentation regarding Mr. Burrison's alleged resignation on April 11. Allegis Group did not

---

[3] Since the Court is limited to the issue certified on the DCN, it will not address disputed issue of the emergency room bill at this time. For that reason, the parties did not admit the hospital records into evidence.

complete a Separation Notice. Mr. Rafiel confirmed that the only documentation that references Mr. Burrison's "resignation with no notice" is a digital screen shot of RWS, which is Allegis Group's computerized personnel system. (Ex. 12.) A colleague of Mr. Rafiel's prepared the RWS entry on April 14 and entered April 11 as the effective date. Mr. Rafiel did not have Mr. Burrison complete a resignation form.

Mr. Burrison's testimony differed dramatically from Mr. Rafiel's. He denied knowing Ms. Ball worked on Pitch 9. Mr. Burrison stated he refused to work on Pitch 9 because his back hurt. He did not think he could do the bending, twisting, and lifting involved on the job. Mr. Burrison was also worried about the transfer case causing additional injury to his back. He identified Mr. Rafiel as the individual who terminated him and walked him out of the building. Further, Mr. Burrison stated it took Allegis Group three weeks after his injury to schedule his first appointment with Dr. Von Gremp, his panel physician.

Nineteen days after his work injury, Allegis Group scheduled Mr. Burrison to see Dr. Von Gremp. He told Dr. Von Gremp that Allegis Group terminated him. For that reason, Dr. Von Gremp provided no restrictions. After conservative treatment failed, Dr. Von Gremp referred Mr. Burrison to Dr. Rickey Hutcheson, an orthopedic surgeon. At his first visit with Dr. Hutcheson, Mr. Burrison told him that Allegis Group terminated him. From May 23 until December 12, Dr. Hutcheson provided Mr. Burrison with sedentary work restrictions. Mr. Burrison's high blood sugar level prevented Dr. Hutcheson from performing surgery, and Dr. Hutchison placed him at maximum medical improvement (MMI) on December 12.

Mr. Burrison argued that Allegis Group terminated him without cause on April 11 following his April 5 injury. He also argued Allegis Group delayed him seeing his panel physician for three weeks, for a back injury that is serious enough to require surgery. Therefore, Mr. Burrison requested that the Court order Allegis Group to pay him temporary partial disability benefits.

Allegis Group countered that Mr. Burrison voluntarily resigned on April 11.[4] Based on the medical proof, Allegis Group argued Mr. Burrison failed to show he is temporarily and totally disabled from working in the open labor market, based on the factors in *Simpson v. Satterfield*, 564 S.W.2d 953, 955 (Tenn. 1978).[5] It further argued Mr. Burrison failed to prove the dates he believes he is entitled to receive temporary

---

[4] The Court notes Allegis Group made a contrary argument in the DCN and its prehearing brief and contended it terminated Mr. Burrison for cause.

[5] The *Simpson* factors for temporary *total* disability benefits require that an employee "must prove that he was (1) totally disabled to work by a compensable injury; (2) that there is a causal connection between the injury and his inability to work; and (3) the duration of that period of disability."

disability benefits. Therefore, Allegis Group requested that the Court deny Mr. Burrison's request.

## Findings of Fact and Conclusions of Law

### *General Legal Principles*

Mr. Burrison need not prove every element of his claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. Instead, he must come forward with sufficient evidence from which this Court might determine he is likely to prevail at a hearing on the merits. *See* Tenn. Code Ann. § 50-6-239(d)(1) (2017); *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015). Applying these principles to the facts of this case, the Court finds that Mr. Burrison appears likely to prevail at a hearing on the merits of his claim.

### *Temporary Partial Benefits*

The sole issue is whether Mr. Burrison is entitled to temporary disability benefits due to his work restrictions. Mr. Burrison seeks temporary partial disability benefits, a category of vocational disability distinct from temporary total disability, when the temporary disability is not total. *See* Tenn. Code Ann. § 50-6-207(1)-(2) (2017). Specifically, while temporary total disability refers to the employee's condition while completely unable to work because of the injury until the worker recovers as far as the nature of the injury permits, "[t]emporary partial disability refers to the time, if any, during which the injured employee is able to resume some gainful employment but has not reached maximum recovery." *Frye v. Vincent Printing Co.*, 2016 TN Wrk. Comp. App. Bd. LEXIS 34, at *15-16 (Aug. 2, 2016.)

The Court must first address whether Mr. Burrison resigned or Allegis Group terminated him for cause. An injured employee may not be entitled to temporary partial disability benefits if he or she is terminated from employment for cause and the employer reasonably would have been able to provide modified duty within the restrictions assigned. To be excused from this obligation, the employer is required to demonstrate that the termination of the injured employee's employment involved a breach of the reasonable expectations of an employer and appears reasonably appropriate. In these cases, the employer is deemed to have made reasonable efforts to accommodate the employee's work restrictions, and the Employee's work injury is not the reason why he is not returned to his former job. *See generally Carter v. First Source Furniture Group*, 92 S.W.3d 367, 371-372 (Tenn. 2002) (holding that, "an employer should be permitted to enforce workplace rules without being penalized in a workers' compensation case." *Id.* at 368.) If the Court finds that Allegis Group terminated Mr. Burrison, it must look closely at the actions of Allegis Group. Specifically, the Court must determine: "(1) that the actions

4

allegedly precipitating the employee's dismissal qualified as misconduct under established or ordinary workplace rules and/or expectations; and (2) that those actions were, as a factual matter, the true motivation for the dismissal." *Mace v. Express Services, Inc.,* 2015 TN Wrk. Comp. App. Bd. LEXIS 49, at *8-9 (Dec. 11, 2015).

Here, Mr. Burrison's case is somewhat unusual, in that his employment with Allegis Group ended *before* he saw his panel physician. In fact, it took *nineteen days* before Allegis Group authorized Mr. Burrison to see Dr. Von Gremp at a *walk-in clinic*. Dr. Hutcheson, the orthopedic surgeon, immediately placed Mr. Burrison on sedentary duty and later recommended back surgery. As previously noted, Allegis Group hired Mr. Burrison on February 22. His injury occurred on April 5. Within six days from his work injury, Allegis Group held two corrective action meetings with him. Mr. Burrison's employment with Allegis Group ended on April 11.

After considering the lay testimony, the medical records, and the evidence as a whole, the Court finds Allegis Group's resignation argument unpersuasive. Allegis Group neither filed a Separation Notice nor completed its own internal form. The only reference to Mr. Burrison resigning is in the RWS report prepared by a colleague of Mr. Rafiel's on April 14. Additionally, the DCN and prehearing brief alleged that Allegis Group terminated Mr. Burrison for cause. Therefore, the Court finds that Allegis Group terminated Mr. Burrison.

The Court next turns to the actions of Allegis Group in terminating Mr. Burrison. Although Mr. Burrison was not at level four, the facts indicate Allegis Group terminated him without following its own established guidelines. Since Mr. Burrison was not at level four, this leads the Court to determine that Mr. Burrison's actions did not qualify as misconduct subject to Allegis Group dismissing him. Instead, Mr. Burrison's refusal to work on Pitch 9 stemmed from his back injury. As previously noted, Allegis Group did not authorize Mr. Burrison to see his panel physician until nineteen days after his injury. Further, given Allegis Group's contradictory arguments, the Court determines that the actions documented in the April 11 Corrective Action form were not the "true motivation" for Mr. Burrison's dismissal.

Accordingly, the Court holds the evidence shows Mr. Burrison is likely to prevail at a hearing on the merits in proving he is entitled to temporary partial disability benefits.

**IT IS, THEREFORE, ORDERED** as follows:

1. The parties stipulated that the amount of temporary disability benefit is $411.67 per week based on Mr. Burrison's average weekly wage of $617.50.

2. Payment of past due temporary total disability benefits in the amount of **$11,997.24** shall be made for the period from May 23, 2017, to December 12,

5

2017. This period is from the date Dr. Hutcheson first placed Mr. Burrison on restricted duty until he placed him at MMI.

3. This matter is set for a Status Hearing on Tuesday, May 1, 2018, at 10:00 a.m., Eastern Time. You must call 423-634-0164 or toll-free at 855-383-0001 to participate. Failure to call may result in a determination of the issues without your participation.

4. **Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2017). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.**

5. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov.

**ENTERED the 6th day of March, 2018.**

**Judge Audrey A. Headrick**
**Court of Workers' Compensation Claims**

**APPENDIX**

Exhibits:
1. Qualifying Separation Determination (For Identification Only)[6]
2. First Report
3. Panel
4. Wage Statement
5. Medical records of Dr. Allen Von Gremp and Dr. Rickey Hutcheson

---

[6] The Court initially admitted this document into evidence and viewed it as a self-authenticating document. After further consideration, the Court sustains defense counsel's hearsay objection to its admissibility.

6

6. Medical records of Volkswagen On-Site Medical Clinic
7. Medical records of Dr. Hutcheson
8. AFC Urgent Care Referral
9. Physical therapy records
10. Parkridge Medical Center Patient Excuse forms
11. Aerotek Corrective Action form dated April 11, 2017
12. RWS screenshot dated April 14, 2017

Technical record:
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Notice of Appearance
4. Show Cause Order
5. Amended Show Cause Order
6. Response to Show Cause Order
7. Response of Employer and Carrier to Show Cause Order
8. Order on Show Cause Hearing
9. Employee's Motion to Compel
10. Request for Scheduling Hearing
11. Request for Expedited Hearing
12. Withdrawal of Request for Expedited Hearing
13. Notice of Scheduling Hearing
14. Response of Employer and Carrier to Employee's Motion to Compel
15. Order Granting Motion to Compel
16. Amended Notice of Scheduling Hearing
17. Request for Expedited Hearing
18. Notice of Expedited Hearing
19. Order Setting Expedited Hearing
20. Motion to Dismiss Request for Expedited Hearing
21. Order Denying Motion to Dismiss Employee's Request for Expedited Hearing
22. Notice of Filing Wage Statement
23. Expedited Hearing Brief of Allegis Group, Employer, and Insurance Company of North America, Carrier
24. Employer and Carrier's Witness and Exhibit Statement
25. Notice of Filing (Parkridge East Hospital medical records)
26. Response to Expedited Hearing Brief of Allegis Group, Employer, and Insurance Company of North America, Carrier
27. Amended Notice of Expedited Hearing
28. Notice of Filing (billing statements of Parkridge East Hospital)
29. Notice of Filing (Statement of Account from Spring Creek Emergency Physicians, PLLC)

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on the 6th day of March, 2018.

| Name | Certified Mail | Via Email | Email Address |
|------|----------------|-----------|---------------|
| Ronald J. Berke, Employee's Attorney | | X | ronnie@berkeattys.com margo@berkeattys.com |
| David J. Deming, Employer's Attorney | | X | ddeming@manierherod.com |

_____

**PENNY SHRUM, COURT CLERK**
wc.courtclerk@tn.gov

8